OHIO EDISON COMPANY, Appellant,

v.

GILMORE et al., Appellees.

[Cite as *Ohio Edison Co. v. Gilmore* (1995), 106 Ohio App.3d 6.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 94–T–5037.

Decided Aug. 7, 1995.

**8**

*Hoppe, Frey, Hewitt & Milligan* and *Kevin P. Murphy*, for appellant.

*William P. McGuire* and *Donald R. Ford, Jr.*, for appellees.

CHRISTLEY, Presiding Judge.

This appeal arises from a judgment in the Trumbull County Court of Common Pleas, dissolving a temporary restraining order and preliminary injunction against appellees and denying appellant's complaint for a permanent injunction. Appellant, Ohio Edison Company, requested that the court enjoin appellees, Larry Gilmore, Sr., Larry Gilmore, Jr., Ronald D. Gilmore, and Larry's Super Pawn, Inc., from interfering with appellant's easement for electric transmission lines and to compel appellees to remove the part of the building that was being built within the easement.

The temporary restraining order was granted on April 5, 1993, pending a trial on the matter. Hearings were held on April 15, 1993 and May 4, 1993, based on which the referee recommended that appellees be enjoined from further interfering with appellant's right of way and seventy-foot easement area which houses transmission lines. Appellees filed objections to the referee's report and appellant filed a memorandum in opposition to appellees' objections, to which appellees then responded. A partial transcript was filed with the trial court.

On February 11, 1994, the court modified the referee's report by rejecting fourteen findings of fact and conclusions of law. In doing so, the court dissolved the temporary restraining order and dismissed appellant's complaint for the injunctions. Pending resolution of this appeal, the temporary restraining order was continued and the trial court's order was stayed by Judge Robert A. Nader on May 11, 1994.

The facts which precipitated this litigation are as follows:

In 1942, the Ohio Public Service Company was granted, through an express agreement for which consideration was paid, a seventy-foot "easement, right, privilege and right of way for a transmission line for the transmission of electric current or energy." The grant of the easement gave appellant the right to "enter upon said land and erect, inspect, operate, replace, repair, and patrol and

permanently maintain on said right of way, towers with the necessary conductors, wires, cross arms and other usual fixtures and appurtenances used or adapted for the transmission of electric current * * *, with the right also to trim, cut and remove at any and all times such trees, * * * within or projecting into the above described right of way as in the judgment of the Grantee may interfere with or endanger said towers and wires or their operation or with any of their appurtenances when erected reserving, however, to the Grantors * * * the right to cultivate the ground between the towers and beneath said wires, provided that such use shall not interfere with or obstruct the rights herein granted * * *."

This easement was filed in the same year, 1942, in the Trumbull County Recorder's Office.

In 1950, the Ohio Public Service Company and appellant merged. All of the former's property, rights, privileges, powers, franchises, and instruments became appellant's property, including the easement and right of way at issue here.

In accord with the right of way and easement, appellant erected and maintained a 138,000–volt transmission line within the seventy-foot easement area. It consisted of three separate lines, the center one of which runs approximately down the center line of the easement, with an additional line running parallel to the center line on each side. This was, and is, one of the two most powerful lines in Warren and was designed in a loop fashion so that if a part of the line is shut off, it will not interrupt service to other customers.

In the late 1980s, appellees bought a piece of property from a sheriff's sale, built "Larry's Super Pawn Shop," and added on at some point after that. That addition is not the subject of this case, although it does partially encroach upon the easement.

In 1993, appellees began to build another addition to their overcrowded store. Property surveys conducted indicate that the addition encroached even further on the easement. The front of the new addition extended almost twenty-five feet into the easement and had been completed as to thirteen courses of ten-inch concrete block and wooden framed roof. The proposed back part of the addition would extend extremely close to the center line of the easement: 34.5 feet by appellant's survey (one-half foot short of the center line of the easement) and 33.1 feet by appellees' survey. This part of the addition had a footer foundation and two courses of blocks laid.[1]

---

1. Appellant claims that most of the construction occurred after appellees received notice that the addition extended into appellant's easement. Appellees admittedly worked on the addition until they received the temporary restraining order on April 5, 1993. The trial court deleted this finding of fact.

Appellant asserts that the addition is an unwarranted interference with and obstruction of its easement and materially interferes with its right to erect, operate and maintain its lines and obstructs rights conferred on it by the easement.

It would appear there was voluminous testimony about how transmission lines are maintained, safety concerns, and the existence of buildings on other lots which are beneath transmission lines. It is unknown what is contained in the portions of the transcript not submitted to the trial court. The trial court found, based on the evidence presented and the partial transcripts from the hearings, that the building did not presently hinder, interfere with or obstruct appellant's transmission of electrical power through these lines.

Appellant asserts the following assignments of error:

"1. The trial court erred to the prejudice of Ohio Edison Company in modifying the report of the referee by rejecting certain findings of fact and conclusions of law and interpolating its own findings which were inconsistent with and against the manifest weight of the evidence.

"2. The trial court's rejection of certain findings of fact and conclusions of law made by the referee constitutes an abuse of discretion.

"3. The trial court erred to the prejudice of appellant in determining that compliance with the NESC obviates any further inquiry involving safety concerns or the degree of care owed by a public utility."

Initially, it is important to note that appellant's ownership of the easement and right of way and appellees' encroachment onto the easement area are undisputed. Further, it is important to note that the easement was obtained through an express agreement for which consideration was paid, rather than through a prescriptive easement. Thus, it provides all of the protections due any party to a contract.

As to the factual findings challenged in all three assignments of error, appellant's second argument under its second assignment of error is dispositive of all of those factual challenges.

Under Civ.R. 53, a trial court may substitute its judgment as to the factual findings made by a referee only if the judge considers the evidence submitted in the case independently or takes new evidence. If a *de novo* hearing is not held, then the court is to review all of the evidence which was before the referee.

"The trial court may redetermine the referee's factual findings based * * * on objections to the referee's factual findings and a review of the transcript of

proceedings before the referee." *Coronet Ins. Co. v. Richards* (1991), 76 Ohio App.3d 578, 585, 602 N.E.2d 735, 740.

This is a different scenario from that in which the trial court changes only the conclusions of law made and recommended by the referee.

■ Here, the trial judge did not have the entire transcript of the proceedings before the referee when the judge modified and deleted some of the referee's findings of fact and issued new conclusions of law based on these revisions. Without the entire transcript, the trial judge could not, under Civ.R. 53, modify or delete findings of fact.

■ When the journal entry indicates that he heard new evidence and relied on both that evidence and the record of the referee's proceedings, he must also have the complete transcript of the referee's proceedings. Therefore, the factual challenges alleged by appellant in its first two assignments of error have merit. The trial court's holding is reversed as to these factual findings.

However, the lack of a transcript does not prevent either the trial judge or us from addressing legal conclusions in the referee's report or the court's journal entry respectively.

Thus, we proceed to address the legal conclusions present in the issues before us for review. These assignments hinge on the extent to which a servient owner may obstruct the use of an easement.

■ In order to determine the extent of an easement, it is necessary to look at the instrument which created it and examine the surrounding circumstances existing at that time to determine the parties' intentions. See *Centel Cable Television Co. of Ohio, Inc. v. Cook* (1991), 58 Ohio St.3d 8, 10, 567 N.E.2d 1010, 1013.

In this case, there was an express easement created by agreement which gave appellant the right to repair, inspect, patrol, and maintain the lines and equipment without interference on the ground below. The easement reserved to appellees the right to cultivate the ground, as long as it did not interfere with appellant's easement.

The court's finding that, because the easement did not expressly prohibit buildings within the easement area, such an intent cannot be inferred does not find support in the majority of case law which deals with the interpretation of an easement created by express agreement, particularly when allowed uses are spelled out in the agreement.

■ Generally, it is true that as long as the additional burden does not interfere with appellant's easement, the additional burden is permissible, but only

if it is consistent with the terms and intent of the grant. See *Gibbons v. Ebding* (1904), 70 Ohio St. 298, 71 N.E. 720; *Clement v. Fishler* (1927), 28 Ohio App. 392, 162 N.E. 706; and *Rueckel v. Texas E. Transm. Corp.* (1981), 3 Ohio App.3d 153, 3 OBR 172, 444 N.E.2d 77.

■ The owner of the servient estate may use the land in any manner or for any purpose that is consistent with or does not unreasonably interfere with the easement. *Gibbons* and *Clement.*

■ In order for an obstruction to be removed, there must be *substantial* interference with the maintenance or repair of appellant's transmission lines. *Rueckel.* The court will order removal of only that property which substantially interferes with and hampers *normal* operations of the lines. *Id.*

So while we agree that the easement's intention was not to exclude appellees from using the area, it very specifically limited their use to cultivation. Such a limitation is not consistent with the erection of a building.

■ Appellant argues that the addition will require it to change the way it would *normally* maintain the wires, or increase its costs and/or provide more risk to its workers. That is a question of fact which we cannot directly address, as previously discussed; however, the easement gives appellant the right to maintain and repair the lines and mandates that appellees not interfere with these rights. The trial court appeared to find that the increased cost and inconvenience of such maintenance and repair were irrelevant. However, that conclusion is contrary to the interest and circumstance of obtaining such an easement. *Gibbons, Clement* and *Rueckel.*

The only rational intent which could underlie the procurement of such an easement is that the utility company wished to guarantee itself the easiest, safest, most convenient and economical means of securing access to its transmission lines for their maintenance and repair. The trial court's opposite conclusion would defeat the very purpose for which most utility easements are obtained.

As to whether there was sufficient evidence to warrant the trial court's finding that the addition would not create safety concerns, again this is a factual finding which cannot be addressed at this point.

■ However, it is our opinion that since the primary legal issue concerns the language and circumstance of the easement itself, the issue of whether the various safety standards were satisfied is essentially irrelevant to the determination of whether the easement was violated. Likewise, it is irrelevant to this particular easement whether transmission lines run over buildings in other areas of the city.

Therefore, we reverse and remand this matter to the trial court in order for the court to comply with Civ.R. 53 in its evaluation of the objections to the referee's report, and further to utilize in its analysis the legal conclusions set forth in this opinion.

*Judgment reversed*
*and cause remanded.*

JOSEPH E. MAHONEY and CACIOPPO, JJ. concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.