OPINION
{¶ 1} The instant appeal emanates from a final judgment of the Geauga County Court of Common Pleas. Appellants, who are the owners of three residential properties in Geauga County, seek the reversal of the trial court's determination to enter judgment against them as to their claims for preliminary and permanent injunctive relief regarding the actions of appellees, the Cleveland Electric Illuminating Company and FirstEnergy Corp., on the three properties. For the following reasons, this court concludes that the trial court did not err in finding in favor of appellees.
 {¶ 2} The subject matter of this case concerns the extent of appellees' authority under certain easements to completely remove trees and other vegetation from each of the three properties. Pursuant to these easements, appellees presently maintain and operate electrical towers and high-tension electrical lines which either sit upon or cross over the three properties. The electrical lines in question, which consist of both 138KV and 345KV power lines, are part of a "transmission corridor" through which appellees sends electricity not only for subsequent distribution to its own customers, but also for use by other power companies located to the east of Ohio. In one form or another, the towers and power lines have existed on the three properties for over seventy years.
 {¶ 3} Each of the disputed properties is located on Stonegate Drive in Munson Township, Ohio. The first of the three properties is presently owned by Linda and Felix Stump, who bought their home and 2.36 acres of land in 1994. Approximately sixty-five years before the Stump purchase, a prior owner of this property granted an easement to the Cleveland Electric Illuminating Company. Besides giving the Illuminating Company the right to construct, operate, and maintain 138KV electrical lines on the property, the easement expressly provided that the Illuminating Company would have the "full authority to cut and remove any trees, or other obstructions along said route which may interfere or threaten to interfere with the construction, operation and maintenance of said transmission lines." The Illuminating Company continued to retain the foregoing rights until it became a subsidiary of FirstEnergy in the late 1990's.
 {¶ 4} Approximately fifty years after obtaining the foregoing easement regarding the Stump property, the Illuminating Company brought a civil action for the purpose of acquiring a separate easement under which it would have the ability to maintain 345KV lines over the property. This action resulted in a settlement under which the Company not only obtained the right to build a new tower and install the new lines, but was also granted the right to keep the area of the easement clear of any building, structure, and any other type of obstruction. In relation to the trees on the property in question, the settlement judgment stated that the Company had been given the right to "cut, trim and remove any branches, tree, or trees from the Easement Premises * * * to the extent such tree or trees may endanger the safety or interfere with any of the [Company's] electric transmission lines." Like the rights the Illuminating Company had obtained under the original easement to the Stump property, the foregoing rights set forth in the settlement judgment was transferred to FirstEnergy in the late 1990's.
 {¶ 5} The second property involved in this case presently belongs to Susan and John Falbo, who purchased their home and 12.64 acres of land in 1996. Although the record before this court on this matter is somewhat confusing, it would appear that the Falbo tract originally belonged to the same individual who owned the Stump land As a result, the Falbo tract is subject to the identical easements as the Stump land That is, in 1929, the Illuminating Company purchased the right to maintain 138KV power lines on the Falbo property. As part of this original easement, the Company was granted the ability to cut and remove any tree which might pose a threat to the proper maintenance and operation of the lines. Furthermore, as part of the 1979 settlement judgment in the same civil action involving the Stump land, the Illuminating Company not only obtained an easement for the 345KV power line, but was also granted the right to dispose of the trees on the Falbo property in the same manner as on the Stump tract. Finally, when the Illuminating Company subsequently became a part of FirstEnergy, its rights under both easements transferred to FirstEnergy.
 {¶ 6} The last parcel of land involved in this matter is presently owned by Janet and Jeffrey Beaumont, who bought their home and 3.69 acres of property in 1993. For whatever reason, this particular property is not subject to the original 1929 easement. However, it is subject to the easement granted to the Illuminating Company in the 1979 settlement judgment. As was noted above, the 1979 easement gave the Company the right "to cut, trim and remove any branches, tree or trees * * * to the extent such tree or trees may endanger the safety or interfere with any of the * * * electric transmission lines." Besides the 1979 easement, the Beaumont property is subject to a separate easement which the Illuminating Company bought from the prior owner of this specific parcel in 1989. In addition to granting the Company the ability to maintain the power lines on the property, this easement stated that the Company had the "full authority to trim, cut, remove or otherwise control at any and all times any trees, limbs, brush or other obstructions within said right-of-way or easement premises; * * *." Like the rights in the 1929 and 1979 easements, the foregoing rights became the property of FirstEnergy in the late 1990's.
 {¶ 7} Even though all three applicable easements expressly referred to the right to remove trees from the easement premises, the Illuminating Company did not cause any tree to be cut down on the three properties while it was the sole holder of the three easements. Instead, any tree which was deemed a threat to the proper maintenance of the towers and power lines were either trimmed or topped. During the period in which this procedure was followed, no accident occurred which resulted in any type of power outage.
 {¶ 8} However, once FirstEnergy had assumed control over the rights granted in the three easements, it began to review the prior procedure of periodically trimming or topping trees which were located within the utility easements the Illuminating Company had throughout its service area. After considering certain industry standards pertaining to this topic, FirstEnergy chose to adopt a "clear-cut" policy on the issue of trees within the easements for its electrical towers and power lines. The ultimate goal of this policy was to cut the trees back to such a degree that it would only be necessary to work on a particular area of its transmission lines once every five years. Accordingly, if a specific easement allowed FirstEnergy to fully remove trees from the easement premises, the company would do so in order to ensure that the trees would not threaten the safety of the towers and power lines. On the other hand, if the wording of an easement did not permit a tree's removal, the company would prune the tree back until it was a certain distance from the power lines. For example, if the voltage in a power line was higher than 138KV, a tree had to be cut back so that it was not within thirty feet of the line.
 {¶ 9} In delineating this new policy in its Vegetation Management Specifications, FirstEnergy stated that the "clear-cut" approach would be applicable only to vegetation and trees which were deemed incompatible with the electrical towers and power lines. To be considered incompatible, the nature of a tree had to be such that it would tend to regrow back to the height of the power lines within five years after it had been trimmed. Moreover, the new policy required that, in determining whether a tree's growth potential was too great, the company's employees had to consider the amount of a line's voltage and whether it was possible for the electrical current to "arch" from a line to a tree.
 {¶ 10} Consistent with the foregoing new policy, FirstEnergy sent notices to the Stump, Falbo, and Beaumont residences during the winter of 2003. At first, the three couples believed that the notices were only intended to indicate that the trees would be trimmed as before. However, the couples were subsequently informed that agents of the company would be coming upon the respective easement premises in the spring of 2004 to determine if any trees had to be removed in order to safeguard the towers and power lines. In response to inquiries from the three couples concerning why the trees would not merely be trimmed, representatives of FirstEnergy attempted to explain the reasoning behind the new "tree" policy at various meetings on the matter. As part of these meetings, certain discussions were held as to whether some type of compromise could be negotiated, but the two sides were never able to reach an agreement.
 {¶ 11} When it finally became apparent that FirstEnergy intended to remove over one hundred trees from the three properties, the three couples initiated the underlying case against both FirstEnergy and the Illuminating Company. Under their first claim for relief, the three couples, appellants, sought a declaratory judgment as to the extent of their rights under the three easements. As the basis for this claim, appellants asserted that the plan of the two companies, appellees, to totally remove certain trees violated the terms of the three easements. In a separate claim, appellants further asserted that appellees were barred from removing the trees under the doctrine of laches because, in planting trees on the easement premises, they had relied upon appellees' previous actions in only pruning the trees in question. Finally, appellants sought a preliminary and permanent injunction which would prohibit appellees from cutting any trees without the trial court's approval.
 {¶ 12} After appellees had answered the complaint and had agreed to delay the removal of the disputed trees until the merits of the case could be heard, the trial court held a full evidentiary hearing on appellants' injunction claim. At the beginning of this proceeding, the parties mutually entered into evidence copies of the three easements pertaining to the respective properties. Appellants then presented testimony which was intended to show that, over the preceding thirty years, appellees had always trimmed or pruned the trees on the easement premises. In response, appellees presented certain testimony concerning the development and application of their "clear-cut" policy. They also submitted testimony from its employees as to how the various trees on the three properties had been picked for removal.
 {¶ 13} In its written judgment issued after the evidentiary hearing, the trial court focused its analysis entirely on the language in each easement concerning appellees' right to remove trees or vegetation located within the easement premises. Upon finding that appellees had originally started to develop the "clear-cut" policy in the late 1990's, the trial court concluded that the policy was "clearly within, and a reasonable exercise of, the authority contained in the above-quoted easements, at least as it relates to vegetation growing within the easements." Based upon this, the trial court then entered judgment in favor of appellees as to appellants' entire claim for injunctive relief.
 {¶ 14} After the release of the foregoing judgment, appellants chose to voluntarily dismiss the remaining claims in their complaint without prejudice. In now appealing the trial court's decision on their injunction claim, appellants have assigned the following as error:
 {¶ 15} "The trial court erred in finding that clear cutting appellants' trees is a reasonable exercise of the easements at issue."
 {¶ 16} Under this single assignment, appellants have raised two basic arguments for our consideration. First, appellants essentially maintain that the trial court erred in interpreting the clauses in the three easements which deal with appellees' ability to trim or remove any tree within the easement premises on all three properties. Specifically, they submit that the trial court failed to interpret the clauses in light of the general legal principle that the owner of the servient estate retains the right to use the subject land in any manner which does not interfere with the easement itself. Appellants contend that, pursuant to this principle, they have a right to grow trees on the easement premises so long as the trees, when properly topped or trimmed, will not interfere with the electrical towers and power lines.
 {¶ 17} As appellants aptly note in their brief, this court has held that the granting of an easement does not deprive the owner of the servient estate of the right to use the underlying land in a new manner. Ohio Edison Co. v. Gilmore (1995),106 Ohio App.3d 6, 12. However, in delineating the scope of this basic principle, this court emphasized in Gilmore that the principle does not apply when the new use of the land would either be inconsistent with the terms and intent of the grant, or interfere with the grantee's use of the easement. Id. Thus, the issue before this court is whether one of the foregoing exceptions to the Gilmore principle as to the owners' use of the easement premises is applicable in this instance.
 {¶ 18} At the outset of our legal analysis, this court would indicate that we have previously described an easement as a nonpossessory interest in land which allows the holder of the easement to employ the land for a limited purpose. Gans v.Andrulis (May 18, 2001), 11th Dist. No. 99-P-118, 2001 Ohio App. LEXIS 2242. Since an easement is set forth in a written agreement, it must be interpreted in the identical manner as any other legal contract; i.e., the primary goal in construing the terms of an easement is to ascertain and enforce the intent of the parties. Murray v. Lyon (1994), 95 Ohio App.3d 215, 219. Furthermore, because the basic interpretation of an easement raises a legal question, an appellate court can engage in a de novo analysis unless it is necessary to consider parol evidence. Id.
 {¶ 19} In determining the intent of the parties to an easement, a court is required to first review the specific wording of the document itself. Columbia Gas Transmission Corp.v. Bennett (1990), 71 Ohio App.3d 307, 318. If the parties' intent is evident from the wording of the document, it is inappropriate for a court to consider any type of parol evidence or apply any rule of construction; under such circumstances, the interpretation of the document is a purely legal matter. Gans,
2001 Ohio App. LEXIS 2242, at *9. On the other hand, if the wording of the easement is not plain and unambiguous, a court is allowed to look beyond the four corners of the document to determine the intent of the parties. Murray, at 219. In addition, parol evidence can be considered if the document does not contain any specific provision on a matter. Bennett, at 318.
 {¶ 20} In the instant case, it cannot be said that the three easements in question were without any provisions which specifically pertained to the issue of the presence of trees inside the easement premises. As was noted previously, the 1929 easement had a clause which gave the Illuminating Company the "full authority to cut and remove any trees * * * which may interfere or threaten to interfere with the construction, operation and maintenance of said transmission lines." Similarly, the 1979 easement, as set forth in the settlement judgment, expressly stated that the Illuminating Company was to have the "permanent right and easement to cut, trim and remove any branches, tree or trees * * * to the extent such tree or trees may endanger the safety or interfere with any of the * * * electrical transmission lines." Finally, the 1989 easement contained a clause which granted to the Illuminating Company the "full authority to trim, cut, remove or otherwise control at any and all times any trees, limbs, brush, or other obstructions within said right-of-way or easement premises; * * *."
 {¶ 21} Although the wording of each of the foregoing clauses is slightly different, each was clearly intended to award the same basic ability to the Illuminating Company; i.e., the full and complete right to remove any tree from the easement area which could endanger or obstruct the proper functioning of the electrical lines. To this extent, this court concludes that it is unnecessary to apply any rules of construction or to consider any parol evidence in regard to these clauses because the wording of each is plain and unambiguous. Stated differently, it is truly not necessary to construe or interpret any of the three clauses because the intent of the original parties to the easements is evident.
 {¶ 22} In regard to the "tree" clauses in the 1929 and 1979 easements, this court would note that each clause contains a phrase which limits the scope of the trees that can be removed from the easement areas. That is, each of the two clauses essentially state that a tree can be subject to removal if that tree "may" endanger or interfere with the continuing operation of the electrical lines. In light of the inclusion of the "interfere" phrases in both clauses, it is quite evident that the original parties to the two easements did not intend for the Illuminating Company to have the right to remove every tree from the land covered by the easements. Nevertheless, it is equally clear that, by including the word "may" in the two phrases, the original parties did not intend to limit the right to remove to only those trees which posed an immediate and direct threat to the power lines. Instead, the wording of the two phrases readily indicates that the right to remove was meant to apply to trees which could ultimately interfere with, or pose a future threat to, the operation of the power lines.
 {¶ 23} During the evidentiary hearing before the trial court, counsel for appellants made the argument that the inclusion of the words "may endanger" or "may interfere" in the phrases had the effect of rendering the entire "tree" clauses ambiguous. As to this argument, this court would simply indicate that the fact that there could be a disagreement as to whether a particular tree poses a danger to the electrical lines does not make the clauses in the 1929 and 1979 easements vague and confusing. It is sufficient that the "tree" clauses set forth a clear general standard which can be objectively applied whenever there is a dispute between the parties.
 {¶ 24} As a final point regarding the two "interfere" phrases, we would reiterate that, once it has been determined that a particular tree poses a possible threat to the towers and power lines, appellees have the full authority to dispose of the tree in any manner they deem appropriate. In other words, the removal of a "threatening" tree cannot be viewed as a discretionary decision which could be challenged on the basis of an abuse. In this respect, the basic authority to remove a tree is the same in all three easements, except that the authority set forth in the 1929 and 1979 easements cannot be invoked unless the tree satisfies the "interfere" requirement.
 {¶ 25} In light of the fact that, even under 1929 and 1979 easements, appellees have the right to remove any tree which poses any possible threat to the integrity of the entire transmission system, it follows that appellants, as the subsequent owners of the underlying land, have not retained the unfettered ability to grow any type of tree within the easement premises. Although each of the three easements states that appellants still have the right to generally use the subject land, the ability to grow any type of tree would clearly be inconsistent with the right granted to appellees under the three "tree" clauses. At best, appellants have only retained under the 1929 and 1979 easements the ability to grow trees which can pose no objective threat to the towers and lines. As a result, since the trial court's basic interpretation of the easements was not flawed as a matter of law, appellants' first argument under their sole assignment lacks merit.
 {¶ 26} Under their second argument, appellants contend that the trial court erred by failing to conclude that they were entitled to injunctive relief on the specific basis that appellees were acting unreasonably under the facts of the instant case. In support of this position, appellants assert that, because they are still the owners of the underlying land and have a basic right to use it, appellees cannot use the land in an unreasonable manner as a matter of law. Appellants further assert that appellees' decision to remove more than one hundred trees should have been deemed unreasonable because they could adequately protect the integrity of the towers and lines by simply continuing to trim the trees in question.
 {¶ 27} Initially, this court would note that appellants' entire second argument is based upon the assumption that the holder of an easement has a general duty to act in a reasonable manner. In making this legal assumption, appellants refer to the decision of the Fourth Appellate District in Hiener v. Kelley
(July 23, 1999), 4th Dist. No. 98CA7, 1999 Ohio App. LEXIS 3570. Our review of the Hiener decision indicates that, as part of its consideration of an issue concerning the extent of an easement, the court stated that when an easement deed does not expressly delineate the scope of an easement, a trial court can look at the surrounding circumstances to determine what the intent of the parties had been. The Hiener court then stated that a "court may define the scope of an easement by what is reasonably necessary and convenient to accomplish the purpose for which the easement was granted." Id., at *34-35, citingBennett, supra, 71 Ohio App.3d 307, 318.
 {¶ 28} At first glance, the foregoing quote appears to support appellants' general assumption. However, at the beginning of the paragraph from which that quote was taken, the Hiener
court indicated that the scope of an easement is first predicated upon the specific language used in the easement deed. Thus, it is apparent that the Hiener court was not recognizing an implied duty of reasonableness. Instead, it was merely holding that if the easement deed does not contain a provision governing a particular issue, a trial court may consider what is reasonable in deciding what the parties intended for the deed to provide. To this extent, the Hiener decision actually stands for the principle that, if the easement deed has an applicable provision, its text is controlling as to the scope of the easement and the rights of the parties. See, also, Murray, supra,95 Ohio App.3d 215, 219.
 {¶ 29} As was noted above, each of the three easements in this case contained a specific clause concerning the removal of trees from the easement premises. Hence, the propriety of appellees' actions in regard to the trees would not be measured against an objective standard of reasonableness. Instead, it would be measured in accordance with the specific language in the "tree" clauses.
 {¶ 30} In the 1989 easement, the "tree" clause did not have any language which placed a limit on, or created a requirement for, the use of the authority to remove trees in the easement area. However, the clauses in the 1929 and 1979 easements did have phrases which essentially limited the use of the authority to remove to those trees that "may" endanger the safety of, or interfere with the proper operation of, the towers and power lines. Thus, pursuant to applicable language of the easements, appellants were only entitled to injunctive relief if they could establish that appellees intended to remove trees which did not pose a possible threat to the transmission system.
 {¶ 31} During the evidentiary hearing before the trial court, appellees presented the testimony of three of its employees. Each of these witnesses basically testified as to the following: (1) the process of trimming or topping most types of trees can have the effect of stimulating additional tree growth; (2) due to a variety of factors, it is difficult to predict how quickly the trees will grow under such circumstances; (3) the variation in the rate of growth raises the possibility that the upper limbs of the trees could come in contact with the power lines; and (4) appellees decided to reduce this risk by adopting the policy of removing these "incompatible" trees from their various utility easements. Moreover, one of the employees specifically testified that the trees to be removed from appellants' properties had the potential to endanger the safety of the lines in question because they were the type of trees which could grow in an irregular manner after they are trimmed.
 {¶ 32} In presenting their case to the trial court, appellants failed to submit any evidence to refute the specific testimony of appellees' employees. Instead, appellants' evidence only tended to establish that the disputed trees on their properties had never made actual contact with the electrical lines. In light of the fact that appellees' right to remove under the 1929 and 1979 easements extended to any tree which could pose a threat to the integrity of the system, this court concludes that appellants' evidence was insufficient to show that appellees' proposed actions violated the applicable terms of the three easements. Accordingly, appellants failed to carry their burden of proof on their claim for injunctive relief.
 {¶ 33} As an aside, this court would emphasize that, under the plain language of the 1929 and 1979 easements, appellees do not have the complete authority to remove every tree from the entire easement premises. Regardless of what policy they choose to adopt as to the trees on their utility easements, appellees are still bound by the exact wording in the deeds granting the easements. Nevertheless, in this specific instance, all of the evidence before the trial court supported the finding that, at this particular time, appellees were only seeking to remove "incompatible" trees; i.e., those trees that could pose an objective threat to the proper maintenance and operation of the towers and lines. Under such circumstances, injunctive relief was not warranted because no violation of the terms of the three easements had been demonstrated.
 {¶ 34} Pursuant to the foregoing analysis, neither of appellants' two arguments is sufficient to show that the trial court erred in entering judgment in favor of appellees as to appellants' entire claim for injunctive relief. Therefore, because appellants' sole assignment of error is not well taken, it is the order of this court that the judgment of the trial court is affirmed.
Ford, P.J., Christley, J., Rice, J., concur.