OPINION
{¶ 1} Defendant-appellant, Diversified Air Systems, appeals from a Mahoning County Common Pleas Court judgment ruling in favor of plaintiff-appellee, Walter Gruger, on appellee's claims for outstanding commissions due and breach of a lease and on appellant's counterclaims, following a bench trial to a magistrate.
 {¶ 2} The Phoenix Electric Company (Phoenix) was wholly owned by appellee. In March 1998, Phoenix entered into an agreement with appellant whereby appellant purchased Phoenix's assets. As part of the consideration for the agreement, appellant agreed to provide appellee with a three-year employment agreement. Additionally, appellee agreed to provide appellant with a lease and a covenant not to compete. Thus, appellee was both appellant's employee and its landlord. While the lease and the covenant not to compete were put into writing and signed by both parties, the employment agreement was not. The terms of appellee's employment agreement called for: $5,000 per month salary for the first three months; $40,000 yearly salary for each of the three years of the agreement; and commissions in addition to salary. The lease ran from March 26, 1998 through February 28, 2002, which included a one-year extension. Appellant agreed to pay its proportionate share of the utilities pursuant to a sub-metering arrangement.
 {¶ 3} During 1998, appellant paid appellee commissions totaling $12,187.56 over a seven-month period. No problems arose during this time. However, appellant complained to appellee regarding his tardiness in completing paperwork and reports.
 {¶ 4} During 1999, appellant paid appellee commissions totaling $14,649.09. Appellant continued to complain to appellee that he was not filing paperwork in a complete and timely manner. It suggested that commissions were being held up until appellee submitted the proper reports. Additionally, during 1999, appellant reassigned appellee several times, limiting his sales territory to only four counties, and eventually assigning him to handle only inside sales. Despite these limited assignments, appellee was involved in other sales for which appellant paid him commissions.
 {¶ 5} During 2000, appellant only paid appellee commissions for the first few months totaling $1,265.93. Appellant once again reprimanded appellee for his failure to complete reports and warned that it would not pay him commissions until his reports were in. Furthermore, during this time, appellee claimed that appellant encouraged him to continue his sales efforts as he had in 1998 and 1999, even though doing so required him to solicit sales beyond what appellant had previously assigned him to do. Appellee believed that he would receive his usual commissions for these efforts.
 {¶ 6} Appellee's last day of employment was February 28, 2001. Appellee requested that appellant pay his commissions. Appellant's president Vince Lisi, asked appellee to prepare a list of the customers for which he believed appellant owed him commissions along with supporting information regarding the sales and commission amounts claimed. Appellee submitted the list to appellant. Appellee gathered the information in the list from researching sales records in his files, sales records at the office, and information from other sales representatives with whom he had worked.
 {¶ 7} Appellee claimed $12,047.76 in commissions were due to him and supported these claimed commissions with a list of sales. After appellee submitted his request for commissions, appellant issued him a check on June 28, 2001, for $1,847.92, which appellee returned.
 {¶ 8} As to the lease, appellant gave appellee notice of its intent to leave the premises several months prior to the expiration of the lease. Appellee advised appellant to take steps to "winterize" the premises in order to lessen the utility expenses. Appellant followed appellee's suggestions and paid the costs involved. However, heat was still maintained in the premises. Appellant did not pay for the last four months of utility bills.
 {¶ 9} Appellant discontinued its operations and began moving its equipment from the building in the fall of 2001. During this time, appellee had some remodeling work done to the leased area to remove a part of the structure that was in danger of collapse.
 {¶ 10} On June 28, 2002, appellee filed a complaint against appellant asserting that appellant breached the oral employment contract and failed to pay rent, utilities, and certain damages due under its lease with appellee. Appellant filed a counterclaim asserting claims for reimbursement for various bills that it paid that it alleged appellee should have paid and for reimbursement for loss of use of the building during the time appellee had the remodeling work done.
 {¶ 11} The case proceeded to a bench trial before a magistrate. The magistrate ruled in appellee's favor finding that appellant owed him $12,047.76 for commissions due and $7,020.56 for lease-related damages, plus interest. It also ruled in appellee's favor on appellant's counterclaim.
 {¶ 12} Appellant filed objections to the magistrate's decision. The trial court overruled the objections and entered judgment in favor of appellee for the amounts set out in the magistrate's decision. Appellant filed a timely notice of appeal on June 17, 2005.
 {¶ 13} Appellant lists seven assignments of error for review. Because appellant's fifth assignment of error is dispositive, we will address it first. Appellant's fifth assignment of error states:
 {¶ 14} "WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW BY ISSUING HIS DECISION ON MAY 6, 2005 WITHOUT DECIDING THE DEFENDANT'S MOTION FOR RECONSIDERATION AND OTHER MATERIALS SUBMITTED ON BEHALF OF APPELLANT DIVERSIFIED AIR SYSTEMS REGARDING THE OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION FILED OCTOBER 26, 2004."
 {¶ 15} Here appellant asserts that the trial court should not have issued its decision without deciding its motion for reconsideration and objections. It further asserts that the court should not have ruled on its objections before it received the trial transcript.
 {¶ 16} The magistrate entered his decision on October 26, 2004. Appellant filed a motion to set aside the magistrate's orders and a request for the trial transcript on November 5. It then filed objections to the magistrate's decision on November 9. The trial court issued its judgment overruling appellant's motion to set aside the magistrate's orders on December 9. It was not until May 6, 2005, that the trial court issued its judgment overruling appellant's objections and entering judgment for appellee. The trial transcript was ultimately filed on July 22, 2005.
 {¶ 17} A party may file objections to a magistrate's decision within 14 days of the filing of the decision. Civ.R. 53(E)(3)(a). If the party files objections to findings of fact, it shall support the objections by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. Civ.R. 53(E)(3)(c).
 {¶ 18} The trial court shall rule on any objections and may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. Civ.R. 53(E)(4)(b).
 {¶ 19} Objections to a magistrate's decision can be based on questions of law or questions of fact. In this case, appellant raised both fact-based and law-based objections. It argued, among other things, that the magistrate failed to consider many of its exhibits, specifically Exhibits 1, 3-6, 15-19, 22, 25-30, and 32-43. Appellant raised factual questions regarding what the magistrate should have found had he considered these exhibits. It also referred to various witnesses' testimony, which the magistrate did not refer to in its decision, in an effort to persuade the court that the magistrate erred in rendering his decision.
 {¶ 20} The trial court ruled on appellant's objections without waiting for and reviewing the transcript. The court knew that appellant had requested the transcript because it had filed such a request with the court.
 {¶ 21} Regardless of whether a transcript has been filed, the trial court always has authority to determine if the magistrate's findings of fact are sufficient to support the conclusions of law drawn from them. Hearn v. Broadwater (1995),105 Ohio App.3d 586, 588, 664 N.E.2d 971. Thus, even without the transcript, the trial court was able to rule on appellant's objections alleging errors of law.
 {¶ 22} However, the court should have waited until the transcript was filed to rule on the alleged errors of fact. The trial court knew that a transcript was in the process of being prepared. It also knew that several of appellant's objections were based on facts and evidence. The only way the court could properly rule on the fact-based objections was to review the transcript of the evidence. Other courts have agreed. SeeWeitzel v. Way, 9th Dist. No. 21539, 2003-Ohio-6822 (it was unreasonable for the trial court to review objections without a transcript when it discovered that a transcript existed and objections clearly challenged the magistrate's findings of fact);Wade v. Wade (1996), 113 Ohio App.3d 414, 419, 680 N.E.2d 1305
(trial court abused its discretion by considering appellee's factual objections when the transcripts submitted as part of those objections were not in compliance with Civ.R. 53(E)); OhioEdison Co. v. Gilmore (1995), 106 Ohio App.3d 6, 11,665 N.E.2d 226 (trial court erred in modifying magistrate's findings when it only had a partial transcript of the proceedings before the magistrate).
 {¶ 23} Thus, the trial court abused its discretion in ruling on the objections without waiting for the trial transcript.
 {¶ 24} Furthermore, since the trial court did not have the transcript when it ruled on appellant's objections, it would not be proper for this court to consider the transcript now as would be necessary to rule on appellant's remaining assignments of error.
 {¶ 25} Appellant also filed a motion for reconsideration on June 1, 2005. In this motion, appellant asked the court to reconsider its judgment because it had not yet received the transcript. On June 17, appellant filed a notice of appeal with this court.
 {¶ 26} Once appellant filed its notice of appeal, the trial court was divested of jurisdiction to rule on appellant's motion for reconsideration. Furthermore, motions for reconsideration of a final order in the trial court are a nullity. Pitts v. OhioDept. of Transp. (1981), 67 Ohio St.2d 378, 423 N.E.2d 1105, paragraph one of the syllabus. Therefore, the court did not err in failing to rule on appellant's motion for reconsideration.
 {¶ 27} However, because the trial court should have waited until the transcript was filed to rule on appellant's objections, appellant's fifth assignment of error has merit.
 {¶ 28} Appellant's remaining assignments of error state:
 {¶ 29} "WHETHER MANUFACTURED, HEARSAY EXHIBITS CONCOCTED UP BY THE PLAINTIFF FOR USE AT TRIAL, WHICH WERE NOT BUSINESS RECORDS, SHOULD HAVE BEEN ADMITTED AND CREDITED BY THE MAGISTRATE JUDGE WHEN APPELLEE GRUGER NEVER DID THE WORK; WAS NOT ASSIGNED TO DO THE WORK; THE COMMISSIONS WERE PAID TO OTHERS; AND THE RECORDS THEMSELVES HAD NO FOUNDATION WHATSOEVER."
 {¶ 30} "WHETHER THE MAGISTRATE JUDGE IMPROPERLY SUPPLIED APPELLEE GRUGER WITH QUASI CONTRACTUCAL THEORIES OF RECOVERY WHEN THE PLAINTIFF NEVER PLED THOSE THEORIES SINCE THE PLAINTIFF CLAIMED UNPAID COMMISSIONS ONLY."
 {¶ 31} "WHETHER THE MAGISTRATE JUDGE IMPERMISSIBLY OVERLOOKED TESTIMONY AND EXHIBITS WHICH DEMONSTRTED UNEQUIVOCALLY THAT APPELLEE GRUGER FAILED TO DO THE WORK ASSIGNED; THAT HE WAS NOT ASSIGNED THE WORK THAT HE CLAIMED HE DID; THAT DIVERSIFIED'S WORK WAS DONE BY OTHERS THAN MR. GRUGER; AND THAT DIVERSIFIED'S WRITTEN POLICIES APPLICABLE TO MR. GRUGER ALLOWED FOR THE OFFSET OF ANY COMMISSION WHERE THE MONIES HAD BEEN RETURNED BY DIVERSIFIED TO THE CLIENT OR CUSTOMER."
 {¶ 32} "WHETHER THE MAGISTRATE JUDGE IMPROPERLY IGNORED TESTIMONY THAT MR. GRUGER FAILED TO FOLLOW COMPANY PROCEDURES; FAILED TO TURN IN HIS REPORTS FOR EIGHT (8) MONTHS AT A TIME; FAILED TO DO HIS JOB, YET ACTING AS IF HE WAS; AND IGNORED THE ORAL AND WRITTEN REASSIGNMENTS OF ACCOUNTS TO OTHERS AND INSTEAD IMPROPERLY CREDITED A FALSIFIED, HEARSAY COMMISSION REPORT."
 {¶ 33} "WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING DEFENDANT DIVERSIFIED'S MOTION TO SET ASIDE THE MAGISTRATE'S ORDERS FILED ON NOVEMBER 4, 2004, WHICH REQUESTED A.) THAT THE PLAINTIFF'S TRIAL PREPARED COMMISSION LIST FILED FEBRUARY 20, 2004 BE STRICKEN AS HEARSAY AND (B) THE MAGISTRATE JUDGE SUGGESTED THEORIES OF RECOVERY TO THE PLAINTIFF AT TRIAL WHICH WERE NOT IN ANY PLEADING FILED BY THE PLAINTIFF, BE STRICKEN."
 {¶ 34} "WHETHER THE LOWER COURT IMPROPERLY AWARDED THE APPELLEE UNPAID RENT WITHOUT CONSIDERING EVIDENCE OF PROPERLY SUBMITED SETOFFS DETAILED IN DIVERSIFIED'S COUNTERCLAIM AND TRIAL EXHIBITS."
 {¶ 35} Given the merit of appellant's fifth assignment of error, we cannot address the merits of its other assignments of error. As noted above, they, for the most part, require consideration of the transcript and the evidence presented at the trial before the magistrate. Since the trial court did not have the transcript to review when it ruled on appellant's objections, this court cannot now consider that transcript.
 {¶ 36} For the reasons stated above, the trial court's judgment is hereby reversed and remanded for further proceedings pursuant to law and consistent with this opinion. On remand, the trial court is to reconsider appellant's objections after it reviews the trial transcript and exhibits.
Waite, J., concurs.
DeGenaro, J., concurs.