DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, the Wimmer Family Trust, appeals an order of the Lorain County Court of Common Pleas that denied its motion for a preliminary injunction and purported to declare the rights and obligations of the parties pursuant to an easement. We affirm.
 {¶ 2} Defendant-Appellee, Ohio Edison, an operating company of First Energy Service Company, ("Ohio Edison") is the beneficiary of a transmission line easement that crosses property owned by the Trust.[1] The easement grants Ohio Edison the right to erect and maintain utility transmission cables across the property owned by the Trust and the ability to "trim, remove, or control by any other means at any and all times such trees, limbs, and underbrush within or adjacent to said right-of-way as may interfere with or endanger said structures, wires or *Page 2 
their appurtenances, or their operation." Ohio Edison operates a 69,000 volt transmission line known as the Abbe-Johnson Line that passes within the property subject to the easement.
 {¶ 3} On February 4, 2008, the Trust filed a complaint for declaratory judgment and injunctive relief and a motion for a temporary restraining order and preliminary injunction in the Lorain County Court of Common Pleas. The Trust alleged that "in a series of letters beginning May 1, 2006, FirstEnergy notified the Wimmers that it (FirstEnergy) intended to clear-cut all trees upon the Property, i.e., remove all tree species, within a 50-foot wide corridor with the Easement, and to remove such other trees as FirstEnergy determined." The Trust also alleged that "[s]ome of the trees FirstEnergy seeks to remove are located outside of the metes and bounds as described in the Easement." The complaint requested that the trial court "determine and declare the metes and bounds as contained in the legal description of such Easement[.]" The Trust also sought a declaration that FirstEnergy did not have the right to "clear cut" trees within or outside of the easement; a temporary restraining order, preliminary injunction, and permanent injunction prohibiting such "clear cuts"; and a temporary restraining order, preliminary injunction, and permanent injunction prohibiting FirstEnergy from removing vegetation without first designating each item to be removed and providing the Trust with notice and a right to challenge the decision or to prune the vegetation.
 {¶ 4} On February 20, 2008, a hearing on the Trust's motion for a preliminary injunction was conducted before a magistrate. The magistrate issued a decision on March 20, 2008, which denied the motion, and the trial court adopted and approved the magistrate's decision on the same date pursuant to Civ. R. 53(E)(4)(e). The trust filed timely objections. On April 24, 2008, the trial court issued two orders, which were time stamped by the Clerk of Courts at 8:35 a.m. The first order states that "this matter came before this Court on Plaintiff's *Page 3 
Objections to Magistrate's Decision *** and Defendant Ohio Edison Company's Response to Plaintiff's Objections[.]" In this order, the trial court reviewed the evidence before the magistrate, overruled the Trust's objections, and determined that Ohio Edison "is entitled to remove from the right-of-way on Plaintiff's property and the area adjacent thereto all vegetation that it determines may interfere with its [69,000 volt] transmission line or the operation thereof." The trial court also stated that it was "denying Plaintiff's claim for injunctive relief and concluded its opinion as follows:
 "It is therefore ORDERED, ADJUDGED AND DECREED that: (1) Plaintiff's Objections to the Magistrate's Decision are overruled; (2) Plaintiff's Motion for Preliminary Injunction is denied; (3) the Temporary Restraining Order is vacated; and (4) Defendant may remove from the right-of-way on Plaintiff's property and the area adjacent thereto all vegetation that it determines may interfere with or endanger its [69,000 volt] transmission line or it[s] operation. There is no just reason for delay."
The second order stated succinctly:
 "Plaintiff's objections to the Magistrate's Decision are overruled. Plaintiff's Motion for Preliminary Injunction is denied. Temporary Restraining Order is vacated. See Journal."
A further notation, which is typed at the end of the order's text, stated, "Case closed. Costs to Plaintiff." The Trust timely appealed, raising one assignment of error with respect to the denial of its motion for a preliminary injunction.
 JURISDICTION {¶ 5} As an initial matter, this Court finds it necessary to clarify the basis for our jurisdiction over this appeal. Section 3(B)(2), Article IV of the Ohio Constitution grants courts of appeals the jurisdiction "to review and affirm, modify, or reverse judgments or final orders[.]" Despite the trial court's insertion of the statement "case closed" in its journal entry, a final judgment from which an appeal would lie has not yet been entered in this case. It appears that *Page 4 
the trial court has declared the parties' rights with respect to Ohio Edison's ability to clear cut on the property subject to the easement, but has not determined the description of the easement as requested in the complaint. Although the transcript of the hearing on the Trust's motion for a preliminary injunction indicates that the parties reached some level of agreement on this point, the extent of their agreement is unclear. With respect to this point, the trial court has failed to expressly declare the rights and duties of the parties to the declaratory judgment action. If the Trust was attempting to appeal from this order as a final judgment in the case, we would have to conclude that this Court lacked jurisdiction. See Haberley v. Nationwide Mut.Fire Ins. Co. (2001), 142 Ohio App.3d 312, 314.
 {¶ 6} The Trust's appeal and assigned error, however, pertain to the denial of its motion for a preliminary injunction. In this respect, R.C. 2505.02(B) includes within the scope of our jurisdiction certain interlocutory orders. Among these are orders that grant or deny a provisional remedy, or "a proceeding ancillary to an action, including, but not limited to, *** a proceeding for a preliminary injunction[.]" R.C. 2505.02(A)(3). R.C. 2505.02 (B)(4) provides:
 "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it *** grants or denies a provisional remedy and to which both of the following apply:
 "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."
See, also, See Sinnott v. Aqua-Chem, Inc., 116 Ohio St.3d 158,2007-Ohio-5584, at ¶ 16.
 {¶ 7} Because in this case the trial court denied the Trust's motion for a preliminary injunction, the order from which the Trust has appealed relates to a provisional remedy within the meaning of R.C. 2505.02(A)(3). The order determines the action with respect to the *Page 5 
provisional remedy and, as required by R.C. 2505.02(B)(4)(b), the Trust would not be afforded a meaningful or effective remedy in an appeal from final judgment if Ohio Edison proceeds on its intention to remove the trees.
 ASSIGNMENT OF ERROR I "The Trial Court Committed Prejudicial Error Denying [the Trust's] Motion for A Preliminary Injunction, Thus Authorizing The Destruction Of [the Trust's] trees."
 {¶ 8} The Trust's sole assignment of error is that the trial court erred by denying its motion for a preliminary injunction to prevent Ohio Edison from cutting trees on the Trust's property. From the Trust's objections to the magistrate's decision and argument in this Court, it appears that the Trust argues that the trial court erred by concluding that it had little likelihood of success on the merits of its claim for a permanent injunction.
 {¶ 9} "Ordinarily, a party requesting a preliminary injunction must show that (1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction." Procter Gamble Co. v.Stoneham (2000), 140 Ohio App.3d 260, 267. This Court reviews a trial court's order denying a preliminary injunction for an abuse of discretion. TGR Ents., Inc. v. Kozhev, 167 Ohio App.3d 29,2006-Ohio-2915, at ¶ 11. In this case, we are also mindful that the trial court referred the Trust's motion for a preliminary injunction to a magistrate pursuant to Civ. R. 53. In reviewing an appeal from a trial court's action on a magistrate's decision, this Court "must determine whether the trial court abused its discretion in reaching its decision. `Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision.'" (Internal citations omitted.) Fields v. Cloyd, 9th Dist. No. 24150,2008-Ohio-5232, at ¶ 9, quoting Mealey v. Mealey (May 8, 1996), 9th Dist. No. 95CA0093. *Page 6 
 {¶ 10} The Trust's likelihood of success on the merits of its claim turns on the scope of the transmission easement in question. Citing testimony from Ohio Edison that fifty trees grow within or adjacent to the easement and "may interfere or endanger the operation of the transmission line," the magistrate concluded that the easement is an easement in gross benefiting Ohio Edison. The magistrate further concluded that the language of the easement itself controlled the dispute. The magistrate ultimately concluded that the Trust "has not satisfied its burden of establishing, by clear and convincing evidence, that it will prevail on the merits of the claim[.]" The trial court reviewed the magistrate's conclusions, concluded that the language of the easement controlled the dispute, and determined that "it is within the sole discretion of Ohio Edison to determine which trees `may interfere with or endanger' its `structures, wires, or their appurtenances, or their operation.'"
 {¶ 11} The trust argued that Ohio Edison has options available to it other than the outright removal of trees, suggesting that pruning — which has been done in the past — should also prove sufficient in the future. In other words, it is the Trust's position that the language of the easement is ambiguous and that the trial court incorrectly assessed its probability of success on the merits by failing to hold Ohio Edison to a standard of reasonableness.
 {¶ 12} "Since an easement is set forth in a written agreement, it must be interpreted in the identical manner as any other legal contract; i.e., the primary goal in construing the terms of an easement is to ascertain and enforce the intent of the parties. *** In determining the intent of the parties to an easement, a court is required to first review the specific wording of the document itself." (Internal citations omitted.) Beaumont v. FirstEnergy Corp., 11th Dist. No. 2004-G-2573,2004-Ohio-5295, at ¶ 18-19. In Beaumont, the Eleventh District Court of Appeals considered FirstEnergy's vegetation management strategy in light of easement language that is *Page 7 
substantially similar to the easement in this case. As in this case, the Court concluded that the inclusion of the word "may" in the easement did not create ambiguity and declined to hold FirstEnergy to a standard of reasonableness. Id. at ¶ 20-29.
 {¶ 13} This Court cannot conclude that the trial court abused its discretion in so doing.
The transmission easement, dated May 1983, granted Ohio Edison the right to maintain vegetation within the easement:
 "The easement rights herein granted shall include the right to erect, inspect, operate, replace, relocate, repair, patrol and permanently maintain upon, over, under and along the above described right-of-way across said premises all the necessary structures, wires, cables and other usual fixtures and appurtenances used for or in connection with the transmission and distribution of electric current, including telephone and telegraph, and the right of reasonable ingress and egress, upon, over and across said premises for access to and from said right-of-way, and the right to trim, remove or control by any other means at any and all times such trees, limbs, and underbrush within or adjacent to said right-of-way as may interfere with or endanger said structures, wires or their appurtenances, or their operation" (Emphasis added.)
Noele Wimmer, who owned the subject property with her husband before it was transferred into the Trust, testified that she received no notice of potential problems related to the trees on the easement until 2005, when she received a letter from Ohio Edison. She characterized the trees as "huge" and explained that they provide a sound buffer between her residence and an active railroad nearby. Mrs. Wimmer also expressed the opinion that removing the trees would make it impossible to sell the property in the future.
 {¶ 14} Ohio Edison presented the testimony of two witnesses at the hearing. Rebecca Spach, who is employed by Ohio Edison as Director of Vegetation Management, testified that Ohio Edison "fully enforce[es] easement rights" by removing incompatible vegetation. She defined incompatible vegetation as "any vegetation that at maturity has the potential to grow into or get near th[e] transmission line and cause an outage." She characterized transmission lines *Page 8 
such as the Abbe-Johnson line as "a vital link" to other portions of the electrical grid and noted that a failure on the line would "impact thousands of customers." Ms. Spach expressed the opinion that several trees on the easement at issue were incompatible with safe operation of the transmission line.
 {¶ 15} David Kozy, Ohio Edison's Supervisor of Transmission Engineering, echoed Ms. Spach's testimony:
 "The impact on [the Abbe-Johnson] line can overload other lines that have to pick up the load that that line would use. Depending on what time of year, what the loading situation is, it could adversely affect those lines which, as we have seen before, the lines — the possibility exists of a cascading failure, which would impact lines as far as Medina and into the Sandusky area."
Mr. Kozy explained two particular risks that motivate Ohio Edison's vegetation management strategy: transmission line sagging under variable weather conditions and arcing, or "a phenomenon where the electricity jumps across to another object." As Mr. Kozy explained:
 "Well, if something happens to the line where there's an arc or contact, the line can become de-energized, which would interrupt the reliable and safe operation of the line itself. You would see potentially outages. The object that would come close or make contact would then become energized, which could cause damage to the public up to electrocution. The object could catch on fire. In this case we are talking about a tree. The branch could blow and again endanger the public."
Mr. Kozy also expressed concern that trees within the easement "provide potential for hazards to the operation of the line."
 {¶ 16} As in Beaumont, the language of the easement is unambiguous, and it is unnecessary to look beyond that language and imply terms that were not included by the parties to the agreement. That unambiguous language permits Ohio Edison to "trim, remove or control by any other means at any and all times such trees *** within or adjacent to said right-of-way as may interfere with or endanger" the transmission line. Ohio Edison presented testimony that the trees at issue are incompatible with safe operation of the Abbe-Johnson line and outlined the *Page 9 
potential safety hazards presented by incompatible vegetation. The Trust, which had the burden of demonstrating that it was entitled to a preliminary injunction, instead argued that Ohio Edison should use less destructive means to accomplish its end. The trial court's conclusion that the Trust failed to demonstrate a substantial likelihood of success on the merits, and its decision to overrule the Trust's objections and adopt the decision of the magistrate, was not an abuse of discretion.
 {¶ 17} The Trust's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARR, P. J., and MOORE, J. CONCUR.
[1] Both the parties and the trial court referred to Ohio Edison and FirstEnergy interchangeably. References to FirstEnergy in this opinion reflect the instances in which that entity name was used in the proceedings below.
 *Page 1