[Cite as *In re Kelch*, 2012-Ohio-5214.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF | : | |
| THE ESTATE OF: | : | Appellate Case No. 24915 |
| | : | |
| RICHARD E. KELCH | : | Trial Court Case No. 2006-EST-1995 |
| | : | |
| | : | |
| | : | (Civil Appeal from Common Pleas |
| | : | ` Court, Probate) |
| | : | |

· · · · · · · · · · ·

## O P I N I O N

Rendered on the 9th day of November, 2012.

· · · · · · · · · · ·

DON A. LITTLE, Atty. Reg. #0022761, 7960 Clyo Road, Clyo Professional Center, Dayton, Ohio 45459

> Attorney for Appellant John Huber

ALFRED W. SCHNEBLE III, Atty. Reg. #0030741, 11 West Monument, Suite 402, Dayton, Ohio 45402

> Attorney for the Estate of Richard E. Kelch

· · · · · · · · · · · ·

HALL, J.

{¶ 1}  Attorney John Huber appeals from a probate court's order adopting a magistrate's determination of the fees to which he is entitled for the services he rendered in

the administration of the estate of Richard E. Kelch. Huber challenges the court's dismissal of his objections to the magistrate's factual findings. He also challenges the court's overruling of his objection asserting that the executor is estopped from contesting the attorney-fee agreement that the executor made with him. The magistrate's decision is consistent with both the law and the evidence. The probate court did not abuse its discretion by adopting it. We affirm.

## I.

{¶ 2}  Richard E. Kelch died testate, leaving behind a wife and four adult children. John Kelch (Richard's son) was appointed the executor of the estate, and he retained Huber to help administer the estate. John and Huber orally agreed that the estate would pay Huber for his administration services according to the Montgomery County Probate Court's attorney-fee schedule.

{¶ 3}  It quickly became clear that the surviving spouse was not going to receive very much from the probate estate. Under the decedent's will, her share was mostly from life-insurance policies, but most of the life-insurance policies that named her as the beneficiary had lapsed due to unpaid premiums. Huber proposed to the family that a trust, the Kelch Family Trust, be created to provide financial security for the surviving spouse. He further proposed that the trust be funded by the children with their shares of the estate. For setting up the trust, John agreed that the estate would pay Huber according to the above-mentioned attorney-fee schedule.

{¶ 4}  The bulk of the estate consisted of shares in a group of closely held companies, the "Ashton Companies." These companies were not doing well when Richard

died, having debts totaling between $1.5 and $2 million. John Kelch was an officer of the Ashton Companies and the only other person who owned their shares. Under a close-corporation agreement, John was required to purchase his father's shares. John was the sole beneficiary of an $800,000 life-insurance policy. John and his father had an understanding that he was to use the life-insurance proceeds to purchase the shares. The proceeds, then, were intended to go into the estate for purchase of the deceased father's shares of Ashton Companies. John deposited most of the proceeds into the estate's bank account.

{¶ 5}    Huber helped draft two inventory-and-appraisal statements for the estate. The estate filed the first statement in December 2006. The probate assets listed on this statement are intangible personal property that add up to just over $1 million. The value of the Ashton Companies' shares was $784,015. An amended inventory and appraisal statement was filed the following month. This statement lists the same intangible personal property as the first statement does but adds up to just under $900,000. The difference lies solely in the lower value given to the Ashton Companies' shares. They were revalued at $664,682.

{¶ 6}    The value of the Ashton Companies' shares was never determined by a professional appraiser. Rather, the values are those stated in a letter signed by John that was attached to the inventories. Huber helped draft the letter.

{¶ 7}    Huber also prepared and filed an Ohio estate-tax return. He used the Ashton Companies' share value stated in the above-mentioned letter to prepare and file the return.

{¶ 8}    By April 2007 the estate had paid Huber $25,998 for his services, despite the fact that the final account had not yet been prepared.[1] When Huber did prepare the final

---

[1] Rule of Superintendence 71 provides that "[a]ttorney fees for the administration of estates shall not be paid until the final account

account, he did so without the estate's bank-account records–he never requested the account statements. Had Huber done so, he would have seen that, starting in March 2007, John had been withdrawing money. The family had agreed to use the money to try and keep the Ashton Companies afloat "because the Ashton companies had been the decedent's whole life." No one told Huber about this plan. As a result, the plan to establish the Kelch Family Trust was abandoned. In 2008, Huber's representation ended.

{¶ 9}   The estate retained new counsel, who retained a professional appraiser. The appraiser valued the Ashton Companies' shares at only $19,700–over $600,000 less than the value on the inventory and appraisal statements that Huber filed.  Counsel filed amended inventory and appraisal statements and also filed amended Ohio estate-tax returns using the new asset values.

{¶ 10}   In December 2009, the estate moved to disgorge the attorney fees that it had paid Huber. The estate asked the probate court to determine the amount that Huber should be paid for his services. The matter was referred to a magistrate, who held an evidentiary hearing. Testifying at the hearing for the estate were John Kelch and Larry Huddleston (an expert), and testifying for Huber were Karen Huber (his secretary), Douglas Root (the Ashton Companies' accountant), Harry Beyoglides, Jr. (an expert), and Huber himself.

{¶ 11}   In a written decision, the magistrate divided Huber's services into four areas: (1) those to determine the assets of the estate and to file the initial papers; (2) those to prepare and file the original and first amended inventory statements and the original Ohio estate-tax return; (3) those related to the trust; (4) those after he was terminated as counsel. (Page 20).

---

is prepared for filing unless otherwise approved by the court upon application and for good cause shown." Sup.R. 71(B).

The magistrate determined that the only services for which Huber is entitled to fees are those in the first category and that a reasonable amount for those services is $6,874.50.

{¶ 12} Huber filed objections to the magistrate's decision with the trial court.[2] Objection A asserts that the magistrate failed to address six facts supported by John Kelch's and Douglas Root's testimony. These facts generally regard the life-insurance proceeds that John received, how the money was used, and John's relationship to the Ashton Companies.[3] Objection B asserts that the magistrate should have concluded that the estate is estopped from

---

[2] There are four objections in all. Only the first three are relevant here.

[3] These are the six facts:

1) that John Kelch deposited to the Executor's account a total sum of $702,000 for the purposes of implementing his purchase of the decedent's stock interest in the Ashton companies (Kelch cross-examination);

2) that John Kelch proceeded to assume full control of the Ashton companies as if he were the sole holder of stock interests in the Ashton companies from and after signing the Receipt and Assignment documents[] Exhibits L and Y on December 26, 2006 (Kelch cross-examination);

3) that the Estate omitted to file tax returns for the ensuing years otherwise reporting the tax consequences for the Estate if the Ashton companies stock had been retained by the Estate during the tax years 1997, 1998, and 1999 and not sold to John Kelch in December of 1996 (Doug Root, Accountant testimony) [The tax years cited here appear to be a mistake. Since the decedent died in June 2006 and the second "fact" refers to December 2006, we assume the years referred to are 2007, 2008, 2009, and 2006 respectively.];

4) that the Executor's decision to apply the $702,000 toward the effort to prop up and save the failing Ashton companies was precipitated by the specific request of the surviving spouse * * * asking him to do so "because the Ashton companies had been the decedent's whole life" (Kelch cross-examination);

5) that remaining beneficiaries of the Estate, i.e., the Decedent's other adult children * * * were aware of, and complicit in the use of the $702,000 in estate funds for the purpose of propping up and saving the Ashton companies which was requested by the surviving spouse * * * (Kelch cross-examination);

6) that [the family] * * * otherwise voiced no objections to the use of the $702,000 in estate funds for the purpose of paying the creditors of the Ashton companies who were also creditors of the Estate of Richard Kelch by virtue of obligations and debts of the Ashton companies that had been co-signed by Richard Kelch and [his surviving spouse].

(Objections of Attorney John Huber to the Magistrate's Decisions of April 29, 2011 (May 10, 2011), 1-2).

contesting the fee agreement. Objection C asserts that the magistrate incorrectly determined that Huber should not be compensated for his trust services. In support of his objections, Huber filed a transcript limited to John's cross-examination testimony and Douglas Root's full testimony.

{¶ 13}   The probate court, on the estate's motion, dismissed objections A and C. The court said that by not filing a full transcript of the testimony presented to the magistrate Huber failed to comply with the procedural requirements in Civ.R. 53(D)(3)(b)(iii) for objecting to a magistrate's factual findings. The court did not review the transcripts that Huber did file. The court overruled objection B, saying that it is not bound by the fee agreement but must determine from the evidence what attorney fees are reasonable and necessary. Concluding that the magistrate had properly reviewed the evidence in making his fee determination, the court adopted the magistrate's decision and ordered Huber to return to the estate $19,123.50 of the amount that it had paid him.

{¶ 14}   Huber appealed.

## II.

{¶ 15}   Huber assigns two errors to the probate court. The first challenges the court's dismissal of objections A and C. The second challenges the court's overruling of objection B on the basis that the court is not bound by the executor/attorney agreement as to fees.   Huber does not challenge the fee determination itself. The abuse-of-discretion standard applies when reviewing a trial court's adoption of a magistrate's decision. *State Farm Mut. Auto. Ins. Co. v. Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, 911 N.E.2d 339,  ¶ 11 (2d Dist.). "A court abuses its discretion when its ruling lacks a sound reasoning process." *State v. Dibble*, Slip

No. 2012-Ohio-4630, ¶ 23, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

### A. The dismissal of the factual-finding objections

{¶ 16}  Objections A and C concern factual findings made by the magistrate. The first assignment of error alleges that the probate court erred by not specifically finding that Huber had failed to submit, as Civ.R. 53 requires, all the evidence relevant to the factual findings. The assignment of error also alleges that the court erred by not reviewing the evidence that Huber did submit.

{¶ 17}  Civil Rule 53(D)(3)(b)(iii) contains the procedural requirements for how a party must object to a magistrate's factual finding. The rule provides that such an objection must be supported by "a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Civ.R. 53(D)(3)(b)(iii). Here the probate court determined that the partial transcript that Huber submitted–John Kelch's cross-examination testimony and the full testimony of Douglas Root–is "insufficient." Said the court, "It is impossible for the Court to undertake an independent review of the objected matters as required by Civ.R. 53(D)(4)(d) without an entire transcript of the evidence submitted to the Magistrate."[4]

{¶ 18}  Huber asserts that if a party objects to a factual finding by a magistrate and the party files only a partial transcript of the evidence submitted to the magistrate, the trial court must make a specific finding about whether the partial transcript constitutes all the evidence relevant to the finding. When the face of the record fails to demonstrate that the submitted

---

[4](Entry Adopting Magistrate's Decision Overruling Objections to the Magistrate's Decision (Oct. 28, 2011), 6).

partial transcript is all the relevant evidence to an issue raised by objection, the trial court does not need to proceed to evaluate the facts presented. Nevertheless, even if the court is required to make a determination that the transcript is an incomplete presentation of the "all the evidence" on the issue,   the court need not do so expressly.

{¶ 19}   Here the probate court's decision unmistakably implies that it found that not all the relevant evidence had been submitted. The court said that it could not independently review the factual findings to which Huber objected without a transcript of all the evidence submitted to the magistrate. It specifically said that the partial transcript was insufficient. The court didn't err simply because it did not recite the language in Civ.R. 53(D)(3)(b)(iii).

{¶ 20}   Huber points out that the court could not have known whether the partial transcript he filed constitutes all the relevant evidence because the court did not review it. He asserts that if only a partial transcript is filed, a trial court must review it.

{¶ 21}   Generally, if only a partial transcript has been submitted, a trial court abuses its discretion by adopting an objected-to factual finding without reviewing the partial transcript. *See Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, 911 N.E.2d 339, at *¶* 13. But there is no abuse of discretion if it is evident from the face of the record that the partial transcript is not all the relevant evidence. This was true in *Posadny v. Posadny*, 2d Dist. Montgomery No. 18906, 2002-Ohio-935. In that case, the husband objected to a magistrate's findings of fact related to the issues of parental rights and responsibilities, child support, and spousal support. He submitted a partial transcript of the evidence presented to the magistrate, consisting only of his parents' testimony. Overruling the objections, the trial court said that the husband failed to submit a transcript of all the relevant evidence. On review, we affirmed, concluding that, by

filing only a partial transcript, the husband failed to comply with Civ.R. 53(D)(3)(b)(iii).[5] We said that on the face of the record the partial transcript "could not possibly be all of the evidence relevant to the issues * * *, considering that the parties themselves testified, as well as [others]." *Posadny* at *4.

{¶ 22} The same is true here. John Kelch's cross-examination testimony and Douglas Root's testimony cannot possibly be all of the relevant evidence. Surely John's direct-examination testimony bears on factual issues raised by both objections A and C. And what about Huber's own testimony? Also, the estate's expert, Larry Huddleston, testified (according to the magistrate's decision) about the understanding between John and the decedent regarding how John was to use the $800,000 in life-insurance proceeds. This is clearly relevant to the issues in objection A.

{¶ 23} Civil Rule 53(D)(3)(b)(iii) requires that the objecting party submit all the relevant evidence presented at the magistrate's hearing, "not just the evidence that the party feels is significant.'" *Fox* at *¶* 17, quoting *Galewood v. Terry Lumber Supply Co.*, 9th Dist. Summit No. 20770, 2002 WL 347378 (Mar. 6, 2002). In this case, it is clear from the face of the record that this was not done. The probate court's decision to dismiss the factual-finding objections was reasonable.

{¶ 24} The first assignment of error is overruled.

### B. The overruling of the estoppel objection

{¶ 25} The second assignment of error alleges that the probate court erred by overruling objection B. This objection states that the magistrate should have concluded that

---

[5]Then the requirement was in Civ.R. 53(E)(3)(b).

the executor, John Kelch, is estopped from contesting the attorney-fee agreement he made with Huber. Huber asserts that if an executor has agreed to pay an attorney a particular fee for handling the estate and has paid that fee, the executor is estopped from later contesting the fee amount.

{¶ 26} Fee agreements between an executor and an attorney are valid. And courts have said that, generally, such agreements should be upheld. *E.g.*, *Imler v. Cowan*, 65 Ohio App.3d 359, 362, 583 N.E.2d 1355 (4th Dist.1989) (saying that "in most cases a fee agreement between the parties should be upheld"); *In re Estate of York*, 133 Ohio App.3d 234, 243, 727 N.E.2d 607 (12th Dist.1999) (saying that "in most cases a contingent fee agreement between the parties should be upheld"), citing *Imler* at 362. But a probate court is not bound by a fee agreement. *Imler* at 362 (saying that "fee agreements are in no way binding upon a probate court"), citing *In re Cercone*, 18 Ohio App.2d 26, 246 N.E.2d 578 (7th Dist.1969).

{¶ 27} R.C. 2113.36 authorizes an executor to pay "reasonable attorney fees" as an administration expense. "R.C. 2113.36 places exclusive jurisdiction to determine reasonable attorney fees in the probate court." *In re Estate of Secoy*, 19 Ohio App. 3d 269, 274, 484 N.E.2d 160 (2d Dist.1984); *see York* at 243 (saying that R.C. 2113.36 and Sup.R. 71 "establish that the probate court is not bound by a prior agreement of the parties"), citing *Imler* at 362. "In all cases, the probate court must look at all the evidence to determine the reasonable value of an attorney['s] services." *York* at 243, citing *Imler* at 362. Those courts that have said that a fee agreement between the parties should generally be upheld recognize that a court must sometimes intervene. *E.g.*, *Imler* at 362 (saying that "this court can envision situations where the intervention of the probate court is necessary"); *York* at 243 (saying that

"the foregoing statutes [R.C. 2113.36] and rules [Sup.R. 71] establish that the probate court is not bound by a prior agreement of the parties, and, in fact, where necessary the probate court may intervene to alter the fee"), citing *Imler* at 362.

{¶ 28} Huber cites no authority for the proposition that in certain situations an executor is estopped from contesting a fee he agreed to pay, and did pay, to an attorney. And we find none. The executor here was not estopped from challenging his fee agreement with Huber, nor was the probate court bound by the agreement. The probate court's decision to overrule objection B was reasonable.

{¶ 29} The second assignment of error is overruled.

{¶ 30} The probate court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN and VUKOVICH, JJ., concur.

(Hon. Joseph J. Vukovich, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Don A. Little
Alfred W. Schneble, III
Hon. Alice O. McCollum