[Cite as *In re Guardianship of Schwarzbach*, 2017-Ohio-7299.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| | | No. 16AP-670 |
| Guardianship of Franz Schwarzbach, | : | (Prob. No. 574161) |
| (Appellant). | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on August 22, 2017

**On brief:** *Brunner Quinn, Rick L. Brunner*, and *Patrick M. Quinn*, for appellant. **Argued:** *Rick L. Brunner*.

**On brief:** *Thomas Taneff Co., LPA, Thomas Taneff*, and *Taylor Sayers*, guardian of appellant. **Argued:** *Taylor Sayers*.

**On brief:** *Kincaid, Randall & Craine*, and *S. Brewster Randall, II*, for appellee.

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

SADLER, J.

{¶ 1} Appellant, Franz Schwarzbach, appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, overruling his objections to a magistrate's decision and appointing a guardian of the person and estate based on a finding that Schwarzbach is incompetent.

## I. GENERAL FACTS AND PROCEDURAL HISTORY

{¶ 2} This matter began with an application filed on August 19, 2015, by appellee, Maria Starr, and Lois Starr-Schram in the probate court seeking to be appointed guardians of the person and estate, respectively, of Schwarzbach. The applicants generally expressed concern over Schwarzbach's alleged mental deterioration that

accelerated with the passing of his wife in 2011. Starr is Schwarzbach's daughter, and Starr-Schram is Starr's mother-in-law. Through counsel, Schwarzbach opposed the appointment of a guardian, asserting that he was fully competent and capable of managing his own business and personal affairs. Although both Starr and Starr-Schram continued to be represented in the case through counsel, Starr-Schram eventually stepped aside from personal appointment as guardian, and the trial court chose to appoint attorney Thomas Taneff as guardian in its final judgment.

{¶ 3} The evidence established that Schwarzbach was born in 1942 and came to the United States from his native Germany at the age of 18. His proficiency in the English language was a point of contention in proceedings before the magistrate. Initially employed as a welder, Schwarzbach soon entered a long and apparently prosperous career operating central Ohio adult nightclubs. At the time of guardianship proceedings, Schwarzbach remained in partnership with one Robert Hetzel, although the formal business arrangement between the two men was unclear. It appeared that Schwarzbach had recently conveyed some of his business interests to third parties, again on terms that are difficult to clarify.

{¶ 4} Schwarzbach and his late wife Elizabeth had three children, Maria, Thomas, and Franz Jr., now deceased. Schwarzbach lives in a home on Lakewood Drive in Minerva Park, lately shared with a 25-year-old companion named Brittany Valenzuela, formerly a dancer in one of his clubs. Schwarzbach's son, Thomas, lives across the street in another house owned by Schwarzbach; they have a contentious relationship, in part because of Valenzuela's appearance in Schwarzbach's life.

{¶ 5} Proceedings commenced before a magistrate in the probate court on September 3 and October 20, 2015. An agreed entry filed on September 3, 2015 reflected a limited agreement between the parties to maintain Schwarzbach's finances in an approximate status quo. This agreed entry limited all expenditures from Schwarzbach's assets except for living and operating expenses paid from his personal PNC bank account, with a stated balance of $60,000. The parties executed a further agreed entry on November 16, 2015 authorizing an additional payment from other accounts in the amount of $17,112.07 for Schwarzbach's taxes.

{¶ 6}  On February 20, 2016, Schwarzbach's current counsel on appeal began representation in the matter and filed a request pursuant to Rule 88 of the Ohio Rules of Superintendence stating that Schwarzbach required the services of an interpreter for further proceedings.

{¶ 7}  On March 31, 2016, Schwarzbach's new counsel requested a transfer of funds from the protected financial accounts into the PNC bank account for additional living expenses, including attorney fees and costs for the guardianship proceedings, litigation costs for a Northern District of Illinois case in which the same counsel represented a corporation partially owned by Schwarzbach, and a $40,000 lease buyout for Schwarzbach's Porsche SUV.  The funds transfer request also cites the need to pay for interpreter services and to pay real estate taxes.  The magistrate denied some aspects of this request by order filed April 13, 2016 after a status conference before the magistrate held on March 31, 2016.  Specifically with respect to attorney fees, the magistrate noted that fees could only be approved and paid pursuant to Loc.R. 71.5 of the Franklin County Court of Common Pleas, Probate Division, after establishment of a guardianship.  The magistrate further noted that counsel had not itemized and substantiated fees, or even produced a fee agreement, for either the guardianship proceedings or the federal civil litigation.  The magistrate approved translation services for future courtroom proceedings and deferred consideration of translation costs for out-of-court services on the same terms as for attorney fees.  The magistrate authorized payment of taxes but denied authorization to purchase the Porsche SUV at lease term.

{¶ 8}  Schwarzbach filed a motion to set aside the magistrate's order, and on May 3, 2016, the court by judgment entry upheld the magistrate's order with some modifications with respect to attorney fees, authorizing transfer of $20,000 into the PNC account for payment of fees, and noting that fees in the guardianship proceedings would remain subject to approval under local rule.  Schwarzbach attempted to appeal that order to this court, and we dismissed for lack of a final, appealable order.  *In the Matter of the Guardianship of Schwarzbach*, 10th Dist. No. 16AP-415 (Aug. 18, 2016) (journal entry of dismissal).  Schwarzbach then unsuccessfully moved for reconsideration in the trial court on the fee issue.

{¶ 9}   A three-day substantive hearing on the merits before the magistrate then took place on October 20, 2015, May 5, and May 13, 2016.   On May 27, 2016, the magistrate issued her report recommending that Schwarzbach be found incompetent and that a guardian be appointed for his person and estate.   The magistrate preferred appointment of an independent third-party guardian, selecting attorney Taneff.

{¶ 10}  Schwarzbach filed objections to the magistrate's decision, supported by transcripts from the October 20, 2015 and May 13, 2016 hearing dates but omitting transcripts from the May 5, 2016 hearing date; although transcripts from all three days had been timely requested by Schwarzbach, the May 5 transcript was not timely filed with the objections.   By decision and judgment entry rendered September 20, 2016, a visiting judge of the probate court overruled all objections, adopted the magistrate's decision in full, and confirmed appointment of attorney Taneff as guardian of Schwarzbach's person and estate.

{¶ 11}  On November 8, 2016, Schwarzbach filed with this court a motion to correct the record, seeking to supplement the record on appeal with information establishing that Schwarzbach's live-in housekeeper, Valenzuela, had been removed from the home.   This filing properly belongs before the trial court in support of further post-judgment proceedings and will not be considered as part of the record on appeal.   Appellate review is limited to the record as it existed at the time the trial court rendered its judgment. *Franks v. Rankin*, 10th Dist. No. 11AP-962, 2012-Ohio-1920, ¶ 73.

## II.  ASSIGNMENTS OF ERROR

{¶ 12}  Schwarzbach brings the following four assignments of error on appeal:

> [1.] The trial court erred in adopting the factual findings of the magistrate.
>
> [2.] The trial court erred in appointing a guardian.
>
> [3.] The trial court erred in presuming [Schwarzbach] to be incompetent, and accordingly refusing to permit him to pay his attorney's fees and expenses incurred in opposing the guardianship.
>
> [4.] The trial court erred in restricting [Schwarzbach's] ability to engage and pay for the costs of a foreign language interpreter.

{¶ 13} Briefs have been filed on behalf of attorney Taneff as guardian and Starr as applicant for a guardianship.

## III.  STANDARD OF REVIEW ON APPEAL

{¶ 14} The standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error.  In this case, the substantive standard is abuse of discretion: "Selection of a guardian is within the discretion of the probate court, subject to statutory restrictions; and that selection will be reversed on appellate review only if it represents an abuse of discretion." *In re Guardianship of Duffy*, 10th Dist. No. 88AP-600 (Mar. 16, 1989); *In re Guardianship of Cohodes*, 10th Dist. No. 14AP-318, 2015-Ohio-2532, ¶ 17.  Due to a probate court's broad authority to manage guardianships and settle accounts, the standard of review on appeal of a guardianship decision is abuse of discretion.  *In re Austin*, 10th Dist. No. 15AP-821, 2016-Ohio-667, ¶ 21-22; *In re Weingart*, 8th Dist. No. 79489 (Jan. 17, 2002) (a judge must make all guardianship decisions in the best interest of the ward, and the standard of review for such decisions is abuse of discretion).  An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### A.  First Assignment of Error

{¶ 15} Schwarzbach's first assignment of error asserts the trial court improperly declined to consider any of the transcripts submitted in support of the objections.  The trial court concluded the objections presented a weight-of-the-evidence challenge to the magistrate's decision and a party objecting to a decision on this basis "has a duty to file a full and complete transcript of the proceedings. * * * When a movant fails to file a complete transcript, the trial court is limited to accepting the fact finder's determination of fact based on the evidence, and may only review for errors in applying these facts to relevant law."  (Sept. 20, 2016 Decision at 2.)

{¶ 16} Schwarzbach concedes on appeal that he filed transcripts of the October 20, 2015 and May 13, 2016 hearings before the magistrate in support of objections, but did

not file the transcript from the May 5, 2016 hearing until doing so in conjunction with his notice of appeal to this court filed on September 22, 2016, two days after the trial court's final judgment. The May 5, 2016 hearing consisted primarily of testimony from lay witnesses called by and supporting Schwarzbach's competence, and in his memorandum in support of his objections before the trial court, Schwarzbach repeatedly quoted and referred to this testimony. Schwarzbach does not argue that the trial court should necessarily have considered the evidence contained in the absent transcript, but asserts on appeal that the trial court should have at least referred to the partial transcripts furnished by Schwarzbach in support of objections. For this proposition, Schwarzbach cites *Pallone v. Pallone*, 10th Dist. No. 15AP-779, 2016-Ohio-7066, ¶ 15, quoting *In re Estate of Kelch*, 2d Dist. No. 24915, 2012-Ohio-5214, ¶ 21, citing *State Farm Mut. Auto. Ins. Co. v. Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, ¶ 13 (2d Dist.) (" 'Generally, if only a partial transcript has been submitted, a trial court abuses its discretion by adopting an objected-to factual finding without reviewing the partial transcript.' ").

{¶ 17} Schwarzbach alternatively argues on appeal that the trial court abused its discretion because it knew that supplemental portions of the transcript had been ordered, but the court did not wait for submission of the complete transcript before rendering its decision. *Gruger v. Diversified Air Sys., Inc.*, 7th Dist. No. 05-MA-103, 2006-Ohio-3568, ¶ 16, 19.

{¶ 18} Civ.R. 53(D)(3)(b)(iii) provides as follows:

> An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

It is undisputed that Schwarzbach did not file the entire transcript of relevant evidence for the court's consideration when addressing his objections to the magistrate's decision. The baseline principle of law requires the court to review partial transcripts only to determine whether the portions of the transcripts submitted are sufficient for the court to resolve the objections. *Pallone* at ¶ 17. "Generally, if only a partial transcript has been submitted, a trial court abuses its discretion by adopting an objected-to factual finding without reviewing the partial transcript." *Estate of Kelch* at ¶ 21. Nonetheless, "there is no abuse of discretion if it is evident from the face of the record the partial transcript is not all the relevant evidence." *Id.*

{¶ 19} In the present case, it is clear that the partial transcript filed by Schwarzbach does not contain all the relevant evidence to address the objections. The objections were largely based on manifest-weight grounds regarding Schwarzbach's mental competence. There were three days of testimony on this issue generally, and Schwarzbach only filed transcripts from two of those three days. Because Schwarzbach did not file the complete transcript necessary for review of his manifest-weight arguments, the trial court appropriately limited its review to accepting the magistrate's determination of fact based on the evidence and only review the magistrate's decision for error in applying the relevant law to those facts. *Hamilton v. Hamilton*, 10th Dist. No. 14AP-1061, 2016-Ohio-5900; *Hipple v. Hipple*, 7th Dist. No. 06 CO 07, 2007-Ohio-4524, ¶ 26.

{¶ 20} Nor did the trial court abuse its discretion in accepting that Schwarzbach intended to file only two days worth of transcripts and proceeding to complete and enter its decision. Civ.R. 53(D)(3)(b)(iii) provides that relevant evidence will be filed within 30 days of filing objections; nothing in that rule or any other authority requires the trial court to inquire about further filings of materials or extend the 30-day deadline in the absence of any explicit requests to do so from the concerned party.

{¶ 21} Schwarzbach's first assignment of error is accordingly overruled.

**B.  Second Assignment of Error**

{¶ 22} Schwarzbach's second assignment of error contends that the trial court erred in appointing a guardian. This is essentially a manifest-weight challenge to the magistrate and trial court's conclusions regarding the evidence. "Judgments supported by

some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. "The phrase 'some competent, credible evidence' in *C.E. Morris* presupposes evidentiary weighing by an appellate court to determine whether the evidence is competent and credible." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 15. " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." ' " (Emphasis omitted.) *Id.* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). Thus, in reviewing a judgment under the manifest-weight standard, a court of appeals weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way. *Eastley* at ¶ 20. In so applying the standard, the court of appeals "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶ 23} R.C. 2111.02(A) provides for appointment of a guardian of the person, the estate, or both of an "incompetent" person. In turn, "incompetent" is defined as "[a]ny person who is so mentally impaired, as a result of a mental or physical illness or disability, as a result of intellectual disability,"[1] or "as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property." R.C. 2111.01(D). The applicant for a guardianship bears the burden of proving incompetence by clear and convincing evidence. R.C. 2111.02(C)(3). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*." (Emphasis sic.) *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). Because the trial court properly disregarded the incomplete transcripts in this matter, the question on review

---

[1] Prior to amendment effective July 13, 2016, the statute used the term "mental retardation." H.B. No. 158.

before this court is whether, based on the four corners of the magistrate's decision, the facts as accepted therein supported the magistrate's conclusion that Schwarzbach was no longer competent to handle his own affairs. *Hightower v. Hightower*, 10th Dist. No. 16AP-182, 2016-Ohio-7870, ¶ 8.

{¶ 24} The magistrate assessed testimony from various witnesses, reaching different conclusions as to the weight and credibility of each. With respect to Schwarzbach's own testimony, the magistrate noted that Schwarzbach's testimony indicated that his relationship with his two surviving children was strained. He resented the fact that his son, Thomas, lived without paying rent in a home owned by Schwarzbach. The magistrate described Schwarzbach's testimony as "rambling" and often dominated by grievances against his children and other associates. (Decision at 20.) The magistrate noted that Schwarzbach projected a very dominating, "bullish" personality and that with his recent decline, he was unaccustomed to loss of control over his own affairs, compounded by the fact that one of his businesses had closed and another was sold. (Decision at 20.) Schwarzbach was reluctant to rely on his children, whom he considered spendthrift and incompetent. Schwarzbach gave inconsistent testimony regarding the extent to which he could rely on Valenzuela and the amount of work she was able to furnish as a housekeeper. In summary, the magistrate concluded that "Schwarzbach's testimony is informative of his opinions but not probative of cognitive capacity and competency." (Decision at 20.)

{¶ 25} The magistrate also assessed the testimony of Schwarzbach's late son Franz Jr.'s long-term girlfriend of 15 years, Lenora Darling. Darling had remained close to the Schwarzbach family after Franz Jr.'s death and provided cleaning services in Schwarzbach's home for pay. Schwarzbach typically paid her by check, although Darling would fill in most of the check according to Schwarzbach's calculation of the amount owed due to his hand tremors. Darling also went to the house two or three times a week to do yard work, but this ended in July 2015 after Valenzuela had moved in due to Valenzuela's objections. Darling noted that over four years between Elizabeth Schwarzbach's death and July 2015, Schwarzbach's health deteriorated and he became forgetful. Darling testified that she found Schwarzbach's medication pills lying on the floor and that Schwarzbach would be unclear what the medication was for and whether he had taken it.

Darling also observed several times Schwarzbach outside his home, partially or nearly entirely undressed. Darling considered that Valenzuela did not treat Schwarzbach well, and Schwarzbach when speaking to her alone would confide that he wished Valenzuela would leave.

{¶ 26} The magistrate considered the testimony of Thomas Schwarzbach. Thomas testified that his father always spoke English, only occasionally interspersing curse words in German. Thomas mowed the lawn for his father's house due to his proximity and conceded that he lived rent-free in his father's other home and that this angered Schwarzbach. On occasions when he did visit Schwarzbach, Thomas stated that if Valenzuela was not there, they would speak easily and freely, but when Valenzuela returned, Schwarzbach would become reticent and ask Thomas to leave. Thomas observed that his father's temperament has become mercurial and unreliable, including episodes of forgetfulness. Thomas felt that the living conditions were squalid due to his father's incontinence and lack of housekeeping. Thomas also suspected that Valenzuela used illegal drugs and supplied Vicodin to sedate Schwarzbach. He felt that Valenzuela controlled his father and was blocking him from family contact. Thomas was concerned that his father was no longer capable of handling his financial affairs, and he did not trust Hetzel, his father's long-term business partner, to manage the businesses with an eye toward Schwarzbach's best interests.

{¶ 27} The magistrate considered the testimony of Starr, Schwarzbach's daughter. She shared her brother's concerns for her father's physical and mental health, which she also observed had declined rapidly since Elizabeth's death in 2011. When Starr took her father to a doctor's appointment with his long-time primary care physician, Dr. Welker, in 2014, Dr. Welker advised Schwarzbach that he should no longer live on his own. Schwarzbach was not pleased and insisted on continuing to live on his own. Starr nonetheless continued to help her father by paying his bills, taking him to medical appointments, and occasionally cleaning the house. She described her father as suffering from Parkinson's disease and a heart condition, and stated that she frequently found his medication untaken in the pill counter or, worse yet, strewn on the floor. In recent events, Valenzuela no longer allowed Starr in the home, Starr was aware that her father had given Valenzuela money to buy illegal drugs, and Starr had seen Valenzuela driving her father's

Porsche SUV. When Starr tried to visit her father recently, Valenzuela had threatened to call police if she did not leave. Police in fact did arrive on that occasion, performed a welfare check, and recommended that Starr not enter the house based on Schwarzbach's reaction. Starr had always heard her father communicate in English with his medical providers, his bankers, his children, and his employees.

{¶ 28} Some of these observations over time had led Starr to seek appointment of a guardian, particularly after Schwarzbach was admitted to the hospital in 2015 and tested positive for Suboxone. Following Dr. Welker's recommendation that Schwarzbach not live at home alone, Schwarzbach discontinued the doctor-patient relationship with Dr. Welker.

{¶ 29} Pursuant to the incident involving police intervention, Schwarzbach was the object of an adult protective services report prepared by a caseworker, Bruce Tolbert, who met with Schwarzbach in July 2015 in his home. Tolbert appeared at the hearing and testified regarding his professional qualifications and his observation of the case. Based on his experience in 17 years of social work and his many investigations of elder abuse, neglect, self-neglect, and exploitation, he described his conclusions after interviewing Schwarzbach. Tolbert testified that Schwarzbach appeared agitated, distressed, and distracted, and complained about his memory. Schwarzbach stated that he wanted Valenzuela out of his house. Tolbert observed unidentified pills in the kitchen and Schwarzbach could not identify them or their origin. Tolbert also observed uncashed checks scattered about. Tolbert's ultimate opinion was that Schwarzbach was at considerable risk, showed sufficient impairment, and required assessment by a clinical psychologist. Tolbert also believed that a neurological assessment would be useful but understood that Schwarzbach had missed three consecutive appointments with his neurologist.

{¶ 30} Dr. John Tilley, a forensic psychologist specializing in testing and assessments, testified regarding his total of six hours of interviewing and assessing Schwarzbach. Dr. Tilley stated that he had been licensed to practice in Ohio since July 2002 and had conducted approximately 200 evaluations to assess diminished capacity for guardianship situations.

{¶ 31} Dr. Tilley's evaluation concluded that there was no language barrier to impede assessment. Dr. Tilley also administered an oral mental-state examination to test for cognitive impairment. Schwarzbach scored a 15 out of a possible 30, a score typically associated with a clear and severe cognitive impairment. Dr. Tilley also observed subjective impairments in orientation, speech, motor behavior, thought process, affect, memory, judgment, concentration, and comprehension. He concluded that Schwarzbach presented significant neurocognitive impairment and was in need of a guardianship because his neurocognitive deficiencies were too substantial and debilitating to manage his own affairs.

{¶ 32} The magistrate also assessed testimony from a probate court investigator who visited Schwarzbach and concluded that Schwarzbach exhibited limited ability to handle his own affairs. The investigator recommended a guardianship.

{¶ 33} The magistrate considered testimony from Dr. Cynthia Ledford, whose opinion was that Schwarzbach did not need a guardian. The magistrate noted that Dr. Ledford is a primary care physician and had never been involved with a proceeding assessing the need for a guardian competency and a guardianship. Her testimony was based on a single new-patient appointment with Schwarzbach in which she met him for approximately 15 minutes. A resident physician conducted a 5-minute dementia screening test during this time. Dr. Ledford was satisfied with Schwarzbach's performance on that test. Dr. Ledford did conclude, however, that Schwarzbach had poor health literacy and could not manage his own medications. Based on this, Dr. Ledford recommended periodic nursing visits to ensure preparation and compliance with a medical regimen.

{¶ 34} The magistrate disregarded further evidence submitted in the form of a letter from Dr. Kathleen A. Ellickson, Ph.D., which opined that Schwarzbach was not in need of a guardianship. The magistrate concluded that Dr. Ellickson was not qualified, did not appear personally, and therefore her opinion could not be probative.

{¶ 35} The magistrate also considered testimony from Schwarzbach's business associates. Schwarzbach's primary partner, Hetzel, testified regarding the actual business arrangements between the two men and gave completely non-credible evidence regarding their respective facility with the English language. The magistrate noted that Hetzel

answered questions without difficulty in English when it was convenient and retreated into incomprehension at other times. Hetzel was not straightforward regarding his recent federal prosecution which resulted in house arrest and the resulting need to transfer business shares to Hetzel's wife. Business dealings of the two men were, perhaps deliberately, tangled and obscure, and Hetzel did not clarify either his own role or Schwarzbach's ability to sustain management of the businesses, beyond the bald assertion that Schwarzbach remained competent. The magistrate also noted that Hetzel's testimony was burdened with a conflict, in that Schwarzbach's eventual incompetence would impair Hetzel's ability to run the businesses without interference.

{¶ 36} The magistrate heard testimony from Peter Hewitt, a bookkeeper who handled deposits, receivables, and basic accounting for the business affairs of the various clubs. Hewitt opined that Schwarzbach could handle his business affairs although he was increasingly forgetful and probably required assistance taking his medications.

{¶ 37} The court, in overruling objections, specifically noted that Schwarzbach is "proficient in English and capable of communicating and comprehending the English language." (Decision at 29.) The court therefore overruled any objections on this basis, adopted the magistrate's report, and approved appointment of a guardian.

{¶ 38} We find no abuse of discretion in the probate court's judgment. Again, "[i]n general, a probate court is given broad discretion in matters involving the appointment of a guardian." *In the Matter of Guardianship of Thomas*, 148 Ohio App.3d 11, 21 (10th Dist.2002). Based on the summary of evidence contained in the magistrate's decision, there was clear and convincing evidence to support the magistrate's conclusion and the trial court's ultimate judgment that Schwarzbach was no longer competent to manage his own business and personal affairs and a guardianship was necessary. Based on diminished capacity and the risk of abuse at the hands of third parties and with the extreme risk from inability to reliably administer medication, the guardianship was appropriate. Schwarzbach's second assignment of error is accordingly overruled.

## C. Third Assignment of Error

{¶ 39} Schwarzbach's third assignment of error asserts that the trial court erred in refusing to allow payment of Schwarzbach's attorney fees and expenses incurred in opposing the guardianship. The basis for this assignment of error is difficult to discern.

Schwarzbach was in fact represented by counsel of his choice throughout the guardianship proceedings. After an initial refusal of further transfers into the current spending account entered by the magistrate, the trial court modified the magistrate's decision on May 3, 2016 and allowed the transfer of $20,000 into the PNC living expenses and operating account "to secure litigation costs, including but not limited to attorney fees that remain subject to approval by the Court pursuant to Local Rules governing the fees in the guardianship proceedings." (May 3, 2016 Entry at 3.) Although all fees remained subject to approval under local rule, Schwarzbach was not deprived of representation by the counsel of his choice nor the ability to provide payment therefor. Schwarzbach's third assignment of error is accordingly overruled.

### D. Fourth Assignment of Error

{¶ 40} Schwarzbach's fourth assignment of error asserts that the trial court erred in "restricting" appellant's ability to engage and pay for a foreign language interpreter. Schwarzbach appears to object to matters controlled by the agreed entry of September 3, 2015 determining that all expenses would run through the PNC account. The magistrate's order of April 13, 2016 did state that interpretation services could be categorized as litigation expenses and paid out of the PNC account. The subsequent court order of May 3, 2016 enlarged on this authorization. We therefore find no indication that the trial court in fact prohibited Schwarzbach from engaging the services of an interpreter in preparation for litigation, and it is apparent that a translator was in fact provided during the course of the hearing before the magistrate.

{¶ 41} Schwarzbach's fourth assignment of error is accordingly overruled.

## III. CONCLUSION

{¶ 42} In accordance with the foregoing, Schwarzbach's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Probate Division, appointing a guardian for the person in the estate of Schwarzbach is affirmed.

*Judgment affirmed.*

TYACK, P.J., and DORRIAN, J., concur.

_____