[Cite as *In re Guardianship of A.R.R.*, 2019-Ohio-3066.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| The Guardianship of [A.R.R.], | : | No. 18AP-995 |
| | | (Prob. No. 591277) |
| [S.N.N., | : | |
| | | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on July 30, 2019

**On brief:** *S.N.N.*, pro se.  **Argued:** *S.N.N.*

APPEAL from the Franklin County Court of Common Pleas
Probate Division

SADLER, J.

{¶ 1} Appellant, S.N.N., appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, removing her as guardian of her adult son, A.R.R., and appointing the Franklin County Guardianship Services Board ("FCGSB") as A.R.R.'s guardian. For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On May 4, 2018, appellant filed an application for appointment as guardian of her adult son, A.R.R., whom she alleged to be incompetent due to mental illness.  On May 18, 2018, FCGSB filed a competing application to be appointed guardian of A.R.R.'s person.  The application alleges A.R.R. "has profound impairment due to untreated symptoms of schizophrenia for a prolonged period" of time, and that "his symptoms have been worsening."  (Application at 4.)

{¶ 3} On June 25, 2018, a magistrate of the probate court held an evidentiary hearing on the competing applications.  Patrick Fahey, M.D., conducted an expert

evaluation of A.R.R. and submitted a report. The probate court summarized Dr. Fahey's findings as follows:

> 18. Dr. Fahey stated that [A.R.R.] is mentally impaired due to the mental illness, catatonic schizophrenia, which he noted to be severe.
>
> 19. Dr. Fahey explained that [A.R.R.] was unable to care for himself or perform daily activities, and would not talk.
>
> 20. Dr. Fahey stated that [A.R.R.'s] condition was not stabilized and was unsure if the condition was reversible, but as of the date of his evaluation, his condition was chronic.
>
> 21. Dr. Fahey recommended that a guardianship be established.

(Dec. 21, 2018 Decision at 5.)

{¶ 4} On May 18, 2018, FCGSB filed a statement of expert evaluation from Hossam Guirgis, a psychiatry physician at Harding Hospital ("OSU Harding"). The probate court summarized the April 26, 2018 statement of expert evaluation as follows:

> 25. Dr. Guirgis's statement of expert evaluation stated that [A.R.R.] is mentally impaired due to mental illness caused by catatonic schizophrenia.
>
> 26. Dr. Guirgis further stated that [A.R.R.] has profound impairments due to untreated symptoms of schizophrenia for a prolonged period.
>
> 27. At the time Dr. Guirgis completed his statement, [A.R.R.] was not eating or drinking and was refusing medications.
>
> 28. Dr. Guirgis recommended that a guardianship be established, and that [A.R.R.'s] condition was not stabilized and is not reversible.

(Dec. 21, 2018 Decision at 6-7.)

{¶ 5} On June 27, 2018, the magistrate issued a decision recommending the probate court find A.R.R., then 24 years old, to be an incompetent person, as defined in R.C. 2111.01(D), because he is so impaired as a result of a mental disability he is incapable of taking proper care of himself. The magistrate further recommended the probate court, pursuant to R.C. 2111.02(C), appoint A.R.R.'s biological mother, appellant, as guardian of A.R.R.'s person.

{¶ 6} The magistrate scheduled a compliance/removal hearing to be held on November 5, 2018 for the purpose of reviewing "[t]he ward's progress and medication

compliance." (June 27, 2018 Mag. Decision at 11.)   The probate court adopted the magistrate's decision as its own on June 27, 2018, and no objection was filed.  A.R.R. was discharged from OSU Harding into appellant's care on July 9, 2018.

{¶ 7}   On August 21, 2018, Kevin Nathaniel Johns, M.D., A.R.R.'s treating psychiatrist at The Ohio State University Wexner Medical Center ("the hospital"), filed a complaint in the probate court seeking removal of appellant as guardian due to her alleged failure to comply with Dr. Johns' recommendation that A.R.R. resume taking the prescribed medication clozapine, resulting in a re-admittance to the hospital with symptoms of catatonia, psychosis, and malnutrition.   Dr. Johns also alleged appellant refused consent for recommended electroconvulsive treatments ("ECT").

{¶ 8}   The August 21, 2018 guardianship complaint contains the following narrative from Dr. Johns:

> [A.R.R.] was hospitalized at OSU Harding Hospital from 4/24-7/9/2018 for catatonia and psychosis. His mother was appointed guardian, and she refused ECT on his behalf. He was discharged to his mother's care on clozapine, valproic acid, and lorazepam. [A.R.R.] was readmitted on 7/15 at OSU due to recurrence of catatonia, psychosis, and malnourishment. His serum medication levels on admission were very low, indicating non-compliance. During course of hospitalization, his catatonia resulted in poor oral intake for 16 days, and essentially no oral intake from 7/20 to 7/27, with laboratory evidence of malnutrition. Mother has been non-compliant with physician recommendations. She did not consent to restarting clozapine until 7/20. She did not consent to restarting lorazepam until 7/24. She continued to refuse consent for ECT despite [A.R.R.'s] personal request to undergo ECT. His catatonia is slowly and tenuously improving with conservative treatment, but on 8/2, mother requested to reduce dose of lorazepam, which risks rebound catatonia and worsening starvation behaviors. Mother denied that [A.R.R.] has psychosis on 8/2 despite [A.R.R.] verbalizing persecutory delusions in front of her and medical providers. She also stated on 8/3 that she will not enforce medications against [A.R.R.'s] will.

(Guardianship Compl. at 2.)

{¶ 9} The complaint also includes the following assessment by Dr. Johns of A.R.R.'s condition at the time the complaint was filed:

> [A.R.R.] is currently on the medical unit because he was too malnourished for admission to the inpatient psychiatric unit. He refuses to consume any foods or water aside from Ensure and milk. ECT has been recommended by multiple psychiatrists as the definitive treatment for his catatonia and his psychosis. [A.R.R.] continues to believe that he does not have schizophrenia.

(Guardianship Compl. at 2.)

{¶ 10} As a result of the complaint, the magistrate moved the previously scheduled compliance/removal hearing from November 5 to October 3, 2018, and ordered an independent medical examination of A.R.R. by Dr. Michael S. Witter. The magistrate conducted an evidentiary hearing on October 3, 2018. On October 5, 2018, the magistrate issued a decision recommending appellant's removal as guardian and the appointment of FCGSB as guardian of A.R.R.'s person for an indefinite period.

{¶ 11} On October 19, 2018, appellant filed her pro se objections to the magistrate's decision. On December 21, 2018, the probate court issued a judgment entry overruling appellant's objections and adopting the magistrate's decision as its own. Therein, the probate court ordered appellant "removed for cause as guardian of the person of [A.R.R.]," and "FCGSB * * * appointed guardian of the person for [A.R.R.] with letters of guardianship issued forthwith." (Dec. 21, 2018 Decision at 20.)

{¶ 12} On December 28, 2018, appellant filed a notice of appeal to this court from the judgment of the probate court. On January 29, 2019, appellant filed the transcript of the October 3, 2018 hearing before the magistrate.

{¶ 13} Appellant filed her pro se appellate brief on February 27, 2019. FCGSB did not file a brief.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant assigns the following two assignments of error for review:

> [1.] The trial court abused its discretion by removing the guardian, despite the fact that no evidence was presented that appellant neglected her duties, was incompetent, or engaged in fraudulent conduct.
>
> [2.] The trial court abused its discretion in adopting all of the magistrate[']s factual findings, after independent review,

without consulting a hearing transcript, and by accepting evidence as true, which was clearly hearsay.

## III. STANDARD OF REVIEW

{¶ 15} The standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections before the trial court, and (2) raised on appeal by assignment of error. *In re Guardianship of Schwarzbach*, 10th Dist. No. 16AP-670, 2017-Ohio-7299, ¶ 14. In a case involving the removal of a guardian pursuant to R.C. 2109.24, the substantive standard is abuse of discretion: " 'Selection of a guardian is within the discretion of the probate court, subject to statutory restrictions; and that selection will be reversed on appellate review only if it represents an abuse of discretion.' " *Id.*, quoting *In re Guardianship of Duffy*, 10th Dist. No. 88AP-600 (Mar. 16, 1989); *In re Guardianship of Cohodes*, 10th Dist. No. 14AP-318, 2015-Ohio-2532, ¶ 17. "An abuse of discretion implies more than an error of law or judgment. Rather, abuse of discretion suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## IV. LEGAL ANALYSIS

{¶ 16} Because a resolution of appellant's second assignment of error is necessary to properly frame this court's analysis, we will begin our discussion with appellant's second assignment of error.

{¶ 17} In appellant's second assignment of error, appellant contends the probate court abused its discretion in adopting all the magistrate's factual findings without consulting the trial transcript. We disagree.

{¶ 18} Civ.R. 53(D)(3)(b)(iii) provides in relevant part as follows:

> *Objection to magistrate's factual finding; transcript or affidavit.* An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. * * * *The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause.*

(Emphasis sic; emphasis added.)

{¶ 19} Our review of appellant's objections to the magistrate's decision reveals appellant took exception to nearly every significant factual finding made by the magistrate, yet did not file the transcript of the hearing before the magistrate within 30 days after filing her objections, as required by Civ.R. 53(D)(3)(b). Nor did appellant seek leave from the probate court to file the transcript out of rule. Rather, appellant filed the transcript more than 1 month after the probate court issued its judgment entry overruling her objections and adopting the magistrate's decision.

{¶ 20} Under Ohio law, a trial court does not err in accepting as true a magistrate's factual findings where the objecting party fails to obtain a transcript of the magistrate's hearing or provide the trial court an affidavit of the evidence if a transcript was unavailable. *JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18 (because objecting party failed to provide the transcript from the magistrate's trial, as required by Civ.R. 53(D)(3)(b)(iii), until after her objections were overruled, the factual findings of the trial court had to be accepted with respect to consideration of her objections to the magistrate's decision); *Stewart v. Hickory Hills Apts.*, 9th Dist. No. 14CA0038-M, 2015-Ohio-5046. *See also Schwarzbach* at ¶ 19 (because the ward did not file the complete transcript necessary for review of his manifest-weight arguments, the trial court appropriately limited its review to accepting the magistrate's determination of fact based on the evidence and only reviewed the magistrate's decision for error in applying the relevant law to those facts). Accordingly, Civ.R. 53 and case law decided thereunder compel the conclusion the probate court did not err when it adopted the findings of fact made by the magistrate in the absence of a transcript of the evidence presented to the magistrate at the October 3, 2018 hearing.

{¶ 21} Moreover, the record in this case reveals appellant did not file the transcript until after the probate court issued a final order disposing of this matter, and after appellant filed her notice of appeal to this court from the judgment of the probate court. In Ohio, a trial court may reconsider a prior final order sua sponte only where the order is void ab initio or to correct a clerical error pursuant to Civ.R. 60(A). *Parker v. Allstate Property & Cas. Ins. Co.*, 7th Dist. No. 12 BE 2, 2012-Ohio-6278, ¶ 31, citing *In re A.S.*, 7th Dist. No. 09 JE 17, 2009-Ohio-6246, ¶ 10-11. Civ.R. 60(A) permits a trial court to sua sponte change a prior final order "for corrections of clerical errors that do not make substantive changes in

a judgment." Here, appellant claims the probate court should have reviewed the untimely filed transcript, sua sponte, and reconsidered its final order in this case, which is certainly a substantive modification. Thus, Civ.R. 60(A) does not apply. Similarly, there is no claim in this case that the probate court lacked subject-matter jurisdiction to remove appellant as guardian and no basis to make such a claim as the removal of a guardian is within the exclusive jurisdiction of the probate court. R.C. 2109.24.

{¶ 22} Moreover, even if the probate court had wished to review the trial transcript and reconsider its decision, the court was without jurisdiction to do so. It is axiomatic that once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment. *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, ¶ 12, citing *State ex rel. Rock v. School Emps. Retirement Bd.*, 96 Ohio St.3d 206, 2002-Ohio-3957, ¶ 8; *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, ¶ 9. Accordingly, to the extent appellant's second assignment of error argues the probate court erred when it failed to sua sponte review the hearing transcript and reconsider its final order in this case, appellant's assignment of error is without merit.

{¶ 23} Appellant also claims in her second assignment of error the probate court improperly relied, in removing her as guardian, on certain hearsay statements from Dr. Johns contained in the complaint and in the report of court investigator Keith Semones. Appellant has cited to the hearing transcript in support of her claim. The Supreme Court of Ohio has concluded, however, that where the objecting party fails to file the required transcript or affidavit "the appellate court is precluded from considering the transcript of the hearing submitted with the appellate record." *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730 (1995). *See also In re Guardianship of Igah*, 2d Dist. No. 26416, 2015-Ohio-4511, ¶ 33 (Although the ward submitted a transcript on appeal, the transcript could not be considered since the trial court did not have the transcript before it when it made its decision to adopt the magistrate's decision.). Because appellant failed to timely file the hearing transcript in support of her objections, this court is precluded from reviewing the transcript in ruling on appellant's assignments of error. Accordingly, our review of appellant's hearsay argument is confined to the four corners of the probate court's decision and the magistrate's findings of fact as incorporated thereby.

{¶ 24} In her objections to the magistrate's decision, appellant expressed disagreement with many of Dr. Johns' assertions, but she did not allege Dr. Johns' statements to the court investigator constituted inadmissible hearsay. Nor did appellant claim she objected to the admission of Dr. Johns' alleged hearsay statements in the proceedings before the magistrate. There is also no reference to any such objection in either the magistrate's decision or the decision of the probate court. Accordingly, appellant's hearsay arguments were waived for purposes of her objections to the magistrate's decision. *See Felice's Main Street, Inc. v. Ohio Liquor Control Comm.,* 10th Dist. No. 01AP-1405, 2002-Ohio-5962, ¶ 14, citing *State v. Keenan*, 81 Ohio St.3d 133, 142 (1998).[1]

{¶ 25} For the foregoing reasons, appellant's second assignment of error is overruled.

{¶ 26} In her first assignment of error, appellant contends the probate court abused its discretion by removing her as guardian in the absence of evidence to support a finding appellant neglected her duties, was incompetent, or engaged in fraudulent conduct. We disagree.

{¶ 27} "[T]he plenary power of the probate court as the superior guardian allows it to investigate whether a guardian should be removed upon receipt of sufficient information that the guardian is not acting in the ward's best interest." *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, ¶ 58. The probate court may remove any fiduciary, pursuant to R.C. 2109.24, after giving the fiduciary not less than ten days notice, for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the property, testamentary trust, or estate that the fiduciary is responsible for administering demands it, or for any other cause authorized by law.

{¶ 28} Here, the probate court, applying the magistrate's factual findings, reached the following conclusion regarding the removal of appellant as A.R.R.'s guardian:

> The evidence shows that [appellant] refuses to acknowledge that [A.R.R.] suffers specifically from schizophrenia. [Appellant] fails to act in [A.R.R.'s] best interest when she interferes and obstructs physicians from proceeding with

---

[1] Because there are a number of hearsay exceptions which could arguably apply to the statements of which appellant now complains, including the exception for statements made for purposes of medical diagnosis or treatment, pursuant to Evid.R. 803(4), information contained in reports kept in the course of a regularly conducted business activity, pursuant to Evid.R. 803(6), and information in public records and reports under Evid.R. 803(8), the absence of a transcript precludes even a plain error analysis.

recommended courses of care for [A.R.R.'s] schizophrenia and the resulting catatonia which has led to his malnutrition and hospitalization. [Appellant] failed to show that she is able to adequately monitor and coordinate all of the services [A.R.R.] needs. Accordingly, the magistrate appropriately applied the law to the facts of this case in removing [appellant] as guardian for [A.R.R.] and recommending the approval of the FCGSB as successor-guardian of the person.

The court recognizes the difficult issues [appellant] has faced in the past few years with [A.R.R.]. While the court prefers to appoint suitable family members as guardians, sometimes circumstances require the appointment of a non-family member to ensure decisions are made in the best interest of a ward. This is the case we are faced with under the current circumstances. It is clear that [appellant] loves her son and cares about his wellbeing. However, the court must ensure that treatment and medication decisions are made in the best interest of [A.R.R.]. Nothing in this decision will change the important relationship between mother and son. To the extent possible, the court encourages the FCGSB to work with [appellant] in ensuring that decisions are made in [A.R.R.'s] best interest.

(Dec. 21, 2018 Decision at 19.)

{¶ 29} Though the probate court did not identify the specific R.C. 2109.24 grounds on which it removed appellant as guardian, it is evident that neglect of duty and/or incompetency underlie the probate court decision. Based on the above cited conclusions, the probate court overruled appellant's objections, removed appellant as A.R.R.'s guardian and appointed FCGSB as guardian.

{¶ 30} Appellant argues in her first assignment of error the evidence presented at hearing does not support her removal as guardian. In her appeal to this court, appellant cites to the hearing transcript and the exhibits admitted at hearing in support of her contention that the probate court abused its discretion when it removed her as guardian. However, as noted in connection with our discussion of appellant's second assignment of error, appellant failed to timely file the hearing transcript, including exhibits, with the probate court. Because appellant did not file the portions of the record necessary for the probate court to conduct a review of the magistrate's factual findings, the probate court acted appropriately in accepting the magistrate's determination of facts and confining its review of the magistrate's decision to error in applying the relevant law to those facts.

*Stewart, Schwarzbach, Liggins.* This court's review of the probate court's decision is further limited to a determination whether the probate court abused its discretion in concluding the facts found by the magistrate supported appellant's removal as guardian for cause. *Duncan, Schwarzbach, Igah.*

{¶ 31} The magistrate's findings of fact, which were adopted by the probate court, are fairly summarized as follows. On September 19, 2018, investigator Semones filed a report entitled "complaint disposition." (Dec. 21, 2018 Decision at 9.) Semones testified at the hearing before the magistrate about information he obtained in the investigation of the complaint and contained in his report. Semones represented to the magistrate that he spoke with Dr. Johns on August 21, 2018, and that Dr. Johns confirmed the statements he made in the guardianship complaint. Semones also conducted interviews with A.R.R., appellant, and a hospital social worker, Amanda Kostyak, who provided nursing and doctors' notes regarding the effectiveness of ECT treatments A.R.R. was undergoing. The probate court found that "[t]he notes suggested that the combination of ECT and prescribed medications were successful." (Dec. 21, 2018 Decision at 10.) According to the probate court, the notes also contained several entries referencing appellant's " 'unwillingness to allow certain medications and continued ECT treatments to be conducted on [A.R.R.] until after his discharge from the hospital.' " (Dec. 21, 2018 Decision at 10.) During Semones interview with Kostyak, she expressed her concern that appellant "would again discontinue [A.R.R.'s] medications after he was released to her care, which could result in his decompensation, the reoccurrence of catatonia, and other psychotic symptoms." (Dec. 21, 2018 Decision at 9.)

{¶ 32} With regard to Semones visit with appellant and A.R.R., Semones told the probate court appellant blamed the doctors at the hospital for taking A.R.R. off his prescribed medications and she denied any responsibility for the very low serum medication levels and malnutrition observed by the medical professionals upon A.R.R.'s admission to OSU Harding in April 2018.

{¶ 33} On September 25, 2018, Dr. Witter evaluated A.R.R. and issued a report. Quoting from Dr. Witter's report, the probate court noted:

> [A.R.R.] cooperated with the assessment. He was not able to look me in the eye at any point during the assessment. He had limited verbal responses with only brief replies and little

content. He showed little energy as he moved slowly and purposefully. He had difficulty shaking my hand. His thoughts lacked some direction and he had slowed thought processing speed. His affect was flat. Seemed indifferent to assessment process. Had difficulty with sustained concentration. Comprehension was mostly good. Lacked insight into his mental illness. *He has been reluctant to take medications due to their sedating effects and possible side effects. He is resistant to thinking he would need a guardian. His mother is presently his guardian and has also been resistant and fearful of the anti-psychotic medication he has been prescribed.* [A.R.R.] has been recently taking his medications and has kept weekly outpatient mental health therapy appointments at OSU. The continuation of a guardianship is in his best interest at this time. He indicated that he would prefer his mother remain guardian instead of the guardianship service board.

(Emphasis added.)  (Dec. 21, 2018 Decision at 11.)

{¶ 34} The probate court further found: "Dr. Witter does not believe [A.R.R.] is capable of managing his activities of daily living or making decisions concerning medical treatments, living arrangements, and diet, and included a note that [A.R.R.] is 'dependent on others for direction supervision.' "  (Dec. 21, 2018 Decision at 11.)

{¶ 35} The probate court noted appellant had presented evidence at the hearing before the magistrate consisting of her own written statement which was read into the record, as well as excerpts from A.R.R.'s medical records.  The probate court adopted the magistrate's finding that "[t]hese exhibits do not provide a clear or definitive picture of [A.R.R.'s] continuum of care."  (Dec. 21, 2018 Decision at 12.)  The probate court noted appellant told the magistrate that Dr. Johns "falsified his allegations" against her.  (Dec. 21, 2018 Decision at 14.)  Appellant also told the magistrate she "continues to believe that [A.R.R.] has some type of mental illness, but does not suffer from schizophrenia." (Dec. 21, 2018 Decision at 14.)

{¶ 36} Appellant also presented a statement from The Ohio State University Hospital Bioethicist Gregory A. Osterson, M.D., who was asked by hospital staff to provide an opinion as to whether appellant was acting in A.R.R.'s best interest by refusing ECT treatment.  The magistrate's factual findings, as adopted by the probate court, contain Dr. Osterson's recommendation.  In summary, Dr. Osterson opined it was not unethical for the hospital staff to withhold ECT treatment in accordance with appellant's wishes.

Dr. Osterson cautioned, however, that if appellant's refusal of necessary medical treatment created an "imminent threat to [A.R.R.'s] life," the hospital could consult "Franklin County Emergency Guardianship Authority." (Dec. 21, 2018 Decision at 14.)

{¶ 37} In matters relating to guardianships, the probate court is required to act in the best interest of the ward. *In re Guardianship of Clark*, 10th Dist. No. 09AP-96, 2009-Ohio-3486, ¶ 29. Ordinarily, an appellate court will not second guess the trial court's determination where there is competent, credible evidence to support it. *Id.* at ¶ 33. Here, however, given appellant's non-compliance with Civ.R. 53(D)(3)(b), the probate court was required to accept the magistrate's factual findings and could only examine the legal conclusions drawn from those facts. *Gill v. Grafton Corr. Inst.*, 10th Dist. No. 09AP-1019, 2010-Ohio-2977. In *Blevins v. Blevins*, 10th Dist. No. 14AP-175, 2014-Ohio-3933, ¶ 14, this court set forth our standard of review under such circumstances as follows:

> [A] transcript of the proceedings before the magistrate is part of the record on appeal; however, the transcript was not before the trial court when it adopted the magistrate's decision. "Appellate review is limited to the record as it existed at the time the trial court rendered its judgment." " 'A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.' " Therefore, we will not consider the transcript in ruling on appellant's assignments of error. " ' "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." ' "

(Citations omitted.) *Id.* at ¶ 14.

{¶ 38} The magistrate's findings of fact, as properly adopted by the probate court, support the court's decision to remove appellant as guardian and appoint FCGSB as guardian of A.R.R.'s person. The factual findings of the probate court show that A.R.R. was re-admitted to the hospital in a catatonic state due to untreated schizophrenia just six days after he was discharged from the hospital into appellant's care. The facts show that A.R.R. was so malnourished on admission that he required medical treatment before he could be admitted to the inpatient psychiatric unit. Though appellant blames A.R.R.'s physicians for A.R.R.'s condition, the factual findings belie appellant's claims. The facts establish

appellant has consistently denied A.R.R. is actively psychotic and suffering from schizophrenia despite the myriad of medical opinions to the contrary.

{¶ 39} The magistrate's findings of fact, as properly adopted by the probate court, demonstrate appellant's conduct in failing to administer necessary medications or lowering the dosage of such medications due to A.R.R.'s complaints of drowsiness, have resulted in serious and life-threatening consequences. Similarly, the facts found by the magistrate, as adopted by the probate court, establish appellant has resisted potentially beneficial medical treatments due to her belief that A.R.R. does not suffer from schizophrenia. These facts support the probate court's conclusion that appellant did not always act in A.R.R.'s best interest. Thus, the facts found by the magistrate and incorporated by the probate court support its conclusion that appellant "fails to act in [A.R.R.'s] best interest when she interferes and obstructs physicians from proceeding with recommended courses of care for [A.R.R.'s] schizophrenia and the resulting catatonia which has led to his malnutrition and hospitalization." (Dec. 21, 2018 Decision at 19.)

{¶ 40} The probate court acknowledged in its decision that appellant loves her son and cares about his wellbeing. Nevertheless, the facts found by the probate court support the conclusion that appellant often accedes to A.R.R.'s wishes with respect to necessary medications rather than making decisions based on the guidance provided by medical professionals and A.R.R.'s best interest. There is no question the risks associated with failing to properly medicate A.R.R. are serious and life-threatening. We also note the facts found by the magistrate and adopted by the probate court suggest that, as of the date of the hearing, A.R.R. was compliant with all prescribed medications and treatment. We also acknowledge that a guardian of the person of an incompetent has the prerogative, under certain circumstances, to make decisions that are contrary to recommendations of treating physicians but which are, nevertheless, in the best interest of the ward.

{¶ 41} Furthermore, we do not read the probate court's decision to remove appellant as guardian as an indictment of appellant's parenting skills, but, rather, as an acknowledgment that appellant's close maternal relationship to A.R.R. is such that she is unable or unwilling to make the difficult decisions required to properly care for A.R.R. There is no doubt appellant is a loving and caring mother to her son. Given A.R.R.'s mental health diagnosis and the resulting cognitive limitations, however, acceding to his wishes

with regard to necessary medical treatment has had a deleterious effect on A.R.R.'s health, resulting in emergency hospitalizations for potentially life-threatening conditions. Similarly, appellant's resistance to the diagnosis of schizophrenia has resulted in the denial of treatments designed to aide patients with such a condition.  Accordingly, the facts found by the magistrate, as adopted by the probate court, support the probate court's determination that a non-family member, such as FCGSB, would be in a better position to make informed decisions whether certain medications and other necessary treatments are in A.R.R.'s best interest.

{¶ 42} For the foregoing reasons, we hold the probate court did not abuse its discretion when it removed appellant as guardian and appointed FCGSB as guardian of A.R.R.'s person as the facts establish such a determination is in A.R.R.'s best interest.

{¶ 43}  For the foregoing reasons, appellant's first assignment of error is overruled.

## V.  CONCLUSION

{¶ 44} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

KLATT, P.J., and BEATTY BLUNT, J., concur.

_____